## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SWB WACO SH, L.P., | § | Case No. 10-38001-H1-11 |
| | § | |
| Debtor. | § | |

### EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
### AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THE DEBTOR HAS REQUESTED EMERGENCY CONSIDERATION OF ITS REQUEST TO USE CASH COLLATERAL ON AN INTERIM BASIS.**

**To the Honorable Marvin Isgur,**
**Chief United States Bankruptcy Judge:**

SWB Waco SH, L.P. (the "Debtor") files this Emergency Motion for Interim and Final Orders Authorizing the Debtor's Use of Cash Collateral (the "Motion").

### Jurisdiction and Venue

1.     This Court has jurisdiction over the subject matter of the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the

relief requested in this Motion are §§ 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

## Background

2.       On September 7, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, or creditors committee has been appointed in the case.

3.       The Debtor owns a recently constructed 375 bed apartment complex (the "Property").  The Property is part of a re-development project of the downtown Waco area and serves primarily as an off-campus student housing facility for Baylor University. The overall mutli-block, downtown Waco redevelopment is a public-private partnership with the City of Waco as a governmental participant in the Property via an 80-year ground lease.

4.       The bankruptcy case was filed primarily to avoid the foreclosure of the Property by Sterling Bank.

**The Debtor's Prepetition Secured Debt to Sterling Bank**

5.       The Debtor is party to the Construction Real Estate Lien Note dated April 22, 2008 by and between the Debtor and Sterling Bank in the maximum principal amount of $18,000,000 (the "Note"). A copy of the note is attached as **Exhibit A**.[1]  Concurrent with the execution of the Note, the Debtor executed a Construction Deed of Trust, Security Agreement, and Financing Statement ("Deed of Trust"). *See* **Exhibit B**.  The Deed of Trust, the Note and the

---

[1]     Due to the voluminous nature of these exhibits, copies of the Note, Deed of Trust and Construction Loan Agreement are not being served on all parties with this motion.  Copies of the exhibits may be obtained by requesting a copy from Debtor's counsel or from the Clerk of the Bankruptcy Court during regular business hours.

underlying Construction Loan Agreement are referred to as the "Loan Documents".    The Debtor's obligations to Sterling Bank under the Note are secured, in part, by a security interest in the Property and the rents derived therefrom (the "Collateral").    The rents derived from the Property constitute "cash collateral" as that term is defined under the Section 363 of the Bankruptcy Code.

**Discussion**

**Cash Collateral**

6.        Under Section 363(c) of the Bankruptcy Code, a debtor may use cash collateral if all interested entities consent or the court authorizes such use. 11 U.S.C. § 363(c)(2).  The court may authorize such use upon a showing that those with an interest in the cash collateral are adequately protected.  *In re Harrington & Richardson, Inc.*, 48 B.R. 431 (Bankr. D. Mass. 1985); *see also In re Certified Corp.*, 51 B.R. 768, 770 (Bankr. D. Haw. 1985) ("[A] debtor is entitled to use cash collateral upon proof of adequate protection").  Also, section 363(e) of the Bankruptcy Code requires that the use of cash collateral be conditioned as is necessary to provide adequate protection to persons that have an interest in cash collateral. 11 U.S.C. § 363(e).  Although the term "adequate protection" is not precisely defined in the Bankruptcy Code, section 361 sets forth three non-exclusive examples of what may constitute adequate protection:  (1) periodic cash payments equivalent to any decrease in value; (2) an additional or replacement lien on other property; or (3) other relief that provides the indubitable equivalent.  *See In re Curtis*, 9 B.R. 110, 111-12 (Bankr. E.D. Pa. 1981).

**Adequate Protection**

7.        This Court should authorize the Debtor's use of cash collateral pursuant to Section 363 of the Code so that the Debtor can pay the expenses relating to the operation of the Property.  Sterling Bank's existing lien will be adequately protected by the expenditure of cash

collateral for the ordinary and necessary expenses of maintaining and operating the Property. In addition, and consistent with § 362(d), the Debtor will make monthly adequate protection payments to Sterling in an amount equal to interest at the non-default contract rate.

8.      The Debtor needs the use of cash collateral to pay for the ordinary and necessary expenses of maintaining the Property.   A proposed 6-month budget is attached as **Exhibit C**.  A three-week budget is attached as **Exhibit D**.  The result of the proposed expenditures will be a stable Property with a continuing stream of rents, thus providing additional adequate protection to Sterling Bank.  *See In re McCombs Properties VI*, *supra*, 88 B.R. at 267 (finding that by committing cash collateral to pay operating expenses and to improve and maintain the property, the debtor has substantially eliminated the risk of diminution of the secured creditor's interest in the cash collateral); *In re T.H.B. Corp.*, 85 B.R. 192 (Bankr. D. Mass. 1988) (finding that adequate protection exists where stream of cash collateral will remain at an approximate even level over a sustained period with new proceeds replacing old).  If the Debtor is not authorized to spend cash collateral, the Debtor would face the real possibility of being forced to cease operations thereby placing the City of Waco and the student tenants in great difficulty.

**Request for Emergency Interim Relief**

9.      Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests that this Court conduct a preliminary hearing on an emergency basis.  As set forth in the attached budgets, the Debtor requires use of cash collateral to maintain the operation of the Property.  The failure to timely pay the obligations associated with the operation of the Property will result in immediate and irreparable harm to the Property and the Debtor's estate.  The Debtor seeks the emergency use of cash collateral on a limited basis in accordance with **Exhibit D** pending a final hearing. Because the Debtor's request for interim authorization seeks the use of only that amount as is

necessary to avoid immediate and irreparable harm to its estate pending a final hearing, its request complies with Bankruptcy Rule 4001(b)(2).

## Notice

10.     Notice of the hearing on the Motion and the proposed interim Cash Collateral Order have been provided (by hand delivery, E-mail, telecopy, overnight mail or courier) to counsel to (a) United States Trustee, (b) Sterling Bank and its counsel, (c) any entity claiming an interest in the collateral, (d) the 20 largest unsecured creditors of the Debtor, (e) the governmental agencies required to be served pursuant to Bankruptcy Rule 2002(j), (f) all known secured creditors, and (g) all parties requesting notice pursuant to Bankruptcy Rule 2002(g).

## Conclusion

11.     For the reasons set forth above, the Debtor requests that the Court enter an interim order authorizing the Debtor to use Cash Collateral during the Interim Period in accordance with, and subject to the limitations contained in, **Exhibit D**.  The Debtor also requests that the Court schedule a final hearing on the Debtor's request to use Cash Collateral after the Interim Period as set forth above and grant such other just relief.

     **Dated: September 8, 2010.**

                              Respectfully submitted,

                              **Porter & Hedges, L.L.P.**

          By:     _____
                  David R. Jones
                  State Bar No. 00786001/S.D.Tex. No. 16082
                  Elizabeth Freeman
                  State Bar No. 24009222/S.D.Tex. No. 24564
                  1000 Main, 36th Floor
                  Houston, Texas 77002
                  (713) 226-6000
                  (713) 226-6253 (Facsimile)
                  **Counsel for the Debtor**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was duly served as set forth above to those parties on the attached Service List and by electronic transmission to all registered ECF users appearing in the case on September 8, 2010.

David R. Jones

### SERVICE LIST

Marc Davis
Hughes Watters Askanase, LLP
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002
*Via email* - mdavis@hwa.com

ADP, Inc
P.O. Box 78415
Phoenix, AZ 85062-8415

Advanced Restoration Services
6803 A Woodway Dr.
Woodway, TX 76712

Advantage Pest Control
2513 Schooner Dr.
Plano, TX 75074

Aguilar Forming Rebar
P.O. Box 360086
Dallas, TX 75336

Arbor Contract Carpet, Inc
2100 East Union Bower, Suite 100
Irving, TX 75061

Associated Interiors, Inc
6750 Boulevard 26
Fort Worth, TX 76180

Barnett Contracting
7703 Bagby Avenue
Waco, TX 76712

Bullseye Glass, LLC
6801 Steinbeck Bend
Waco, TX 76708

Callsource
31280 Oak Crest Dr., Suite 3
Westlake Village, CA 91361

Campus Advantage, Inc.
110 Wild Basin Rd., Suite 365
Austin, TX 78746

Carol W Peddy
505 Briarglen Dr.
Coppell, TX 75019

Catalyst
110 Wild Basin Rd., Suite 350
Austin, TX 78746

Central Texas Security & Fire
205 Otis Dr., #1B
Waco, TX 76712

City Of Waco
Water Utility Service
P.O. Box 2570
Waco, TX 76702-2570

City Of Waco
P.O. Box 406
Waco, TX 76703

Citywide Mechanical, Inc.
3825 Bryan St.
Dallas, TX 75204

Comcast
P.O. Box 3005
Southeastern, PA 19398

Computerized Security Systems, Inc.,
Saflok Division
31750 Sherman Avenue
Madison Heights, MI 48071-1403

Countersource, Inc.
5021 Statesman Dr.
Irving, TX 75063

CTWP
215 Washington Ave
Waco, TX 76710

Darden Building Materials, Inc.
200 Otis Dr.
Waco, TX 76712

DASH
Attn: Reagan Ramsower
Baylor University
Waco, TX 76798

DirecTV
P.O. Box 60036
Los Angeles, CA 90060

Dodd Creative Group
4300 N. Central Expressway
Dallas, TX 75206

Drywall Inc.
2301 Kendall Lane
Waco, TX 76702

Dupuy Oxygen
120 S.W. Loop 340
Waco, TX 76714

EE Reed Construction, LP
333 Commerce Green Blvd
Sugar Land, TX 77478

Elizabeth Muska
902 S. Marable
West, TX 76691

Federal Express
P.O. Box 660481
Dallas, TX 75266

First Home Improvement, Inc.
9272 Lyndon B. Johnson Fwy
Dallas, TX 75243

Fox Electric
1104 Colorado Ln
Arlington, TX 76015

Fun N Sun Pools, Inc
3601 Kim Dr., Suite 201
Irving, TX 75061

Hardware Resources
21240 Foster Rd., Suite 2
Spring, TX 77388

HD Supply Facilities Maintenance
P.O. Box 509058
San Diego, CA 92150-9058

HLU Services, Inc
14000 Old Richmond Rd.
Sugar Land, TX 77478

In-Touch Communications
P.O. Box 811
Martinsburg, WV 25402

Internal Revenue Service
Special Procedures
Stop 5022 HOU
1919 Smith St.
Houston, TX  77002

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

International Sports Properties
Dept. 905 ISP
P.O. Box 667715
Charlotte, NC 28266-7715

IRIO Inc.
15303 Dallas Pkwy, Suite 150
Addison, TX 75001

James R. Cook/Jadco Contracting
2386 S. Dairy Ashford
Houston, TX 77077

Jerry Lankford
P.O. Box 387
Eddy, TX 76524

JM Elite Builders
2800 S. Orange Blossom Trail
Orlando, FL 32805

Johnson Roof System, Inc.
P.O. Box 11368
Waco, TX 76716

Lawns Ltd., Inc
1824 Austin Ave.
Waco, TX 76701

LS Decker, Inc.
6901 Maple Avenue
Dallas, TX 75235

McLennan Community College
P.O. Box 406
Waco, TX 76703

McLennan County
P.O. Box 406
Waco, TX 76703

McLennan County Tile Co., Inc.
P.O. Box 2345
Hewitt, TX 76643

Metal Construction Materials, Inc.
8129 Jackrabbit Rd.
Houston, TX 77095

Michael Orsak
611 Houston St.
Richmond, TX 77469

MTO Cleaning Services
250 Bob White Circle
Lorena, TX 76655

Office Max Inc.
P.O. Box 101705
Atlanta, GA 30392

Otis Elevator Company
P.O. Box 730400
Dallas, TX 75373-0400

Overhead Door Co. of Waco
22009 Bush Dr.
Waco, TX 76712

RealPage Inc.
P.O. Box 671777
Dallas, TX 75267-1777

Schindler Elevator Corporation
P.O. Box 70433
Chicago, IL 60673-0433

Soloman Moore
P.O. Box 250786
Plano, TX 75025

Standard Coffee Service Co
P.O. Box 974860
Dallas, TX 75397-4860

Star Tex Power
P.O. Box 4802
Houston, TX 77210-4802

Sterling Bank
Attn: Legal Dept.
2550 North Loop West, Suite 600
Houston, TX 77092

The Rock Painting & Remodeling
P.O. Box 152528
Waco, TX 76715

Time Warner Cable
P.O. Box 7852
Waco, TX 76714

TQP Painting & Decorating, LP
3941 Legacy Dr.
Plano, TX 75023

United States Trustee
515 Rusk, Suite 3516
Houston, TX  77002

University Directories
P.O. Box 8830
Chapel Hill, NC 27515

Unlimited Sprinkler Fire Protection, Inc
1130 Petal St., Suite 800
Dallas, TX 75238

Waco ISD
P.O. Box 406
Waco, TX 76703

Waco Public Imp. Dist. #1
P.O. Box 406
Waco, TX 76703

Waste Management
P.O. Box 13648
Philadelphia, PA 19101

Whirlpool Corporation
412 N. Peters Rd.
Knoxville, TN 37922

Wallace Bajjali Development Partners, LP
13135 Dairy Ashford, Suite 150
Sugarland, TX 77478

SWB Waco SH, L.P.
13135 Dairy Ashford, Suite 150
Sugarland, TX 77478

Walker & Patterson, P.C.
P.O. Box 61301
Houston, TX  77208

Kevin Matocha
1650 Hwy 6 South, Suite 430
Sugar Land, TX 77478

# EXHIBIT A

# REAL ESTATE LIEN NOTE

**$18,000,000.00**                                                                     April **22,** 2008

      **SWB WACO SH, L.P.**, a Texas limited partnership ("**Maker**", whether one or more), jointly and severally, For Value Received, promises and agrees to pay in installments, and as provided below, to the order of **STERLING BANK**, a Texas banking corporation  (which together with its successors and assigns and any subsequent owners and holders of this note is called "**Payee**") at its banking quarters located at **2550 North Loop West, Suite 600, Houston, Harris County, Texas 77092**, or at such other address as Payee may specify in writing from time to time, the principal sum of **EIGHTEEN MILLION AND NO/100 DOLLARS ($18,000,000.00)** or so much thereof as may be advanced pursuant to a Construction Loan Agreement of even date herewith (hereinafter called "**Loan Agreement**") between Maker, as borrower, and Payee, as lender, together with interest thereon from and after the date of each advance under the Loan Agreement until April **22,** 2010 (the "**Maturity Date**"), at a varying rate per annum which is **fifty-five one hundredths percent (0.55%)** (hereinafter called the "**Margin Percentage**") **below** the Prime Rate (hereinafter defined), but in no event to exceed the Maximum Rate (hereinafter defined), with adjustments in such varying rate to be made on the same date as any change in the Prime Rate and adjustments due to changes in the Maximum Rate to be made on the effective date of any change in the Maximum Rate; such interest payable as it accrues on the maturity date of each of the installments described below, on the then unpaid principal balance of this note. For the purposes of this note, the sum of the Prime Rate minus the Margin Percentage shall hereinafter be referred to as the "**Stated Rate.**"

      FOR THE purposes of this note, "**Prime Rate**" means that variable rate of interest per annum published in the Money Rates section of the Wall Street Journal from time to time as the "Prime rate" for the U.S.  This rate is a composite or the highest of any range of rates set by financial institutions selected by the Wall Street Journal.  These financial institutions set their respective "prime rates" as a general reference rate of interest, taking into account such factors as they may deem appropriate, it being understood that many of their commercial or other loans are priced in relation to such rate, that it is not necessarily the lowest or best rate actually charged to any customer and that they and Payee may make various commercial or other loans at rates of interest having no relationship to such rate.  If for any reason the Prime Rate ceases to exist or to be readily available, then Payee may replace and substitute the Prime Rate and the Margin Percentage with a different index and margin percentage that historically has yielded, or that Payee believes prospectively will yield, an interest rate on this note comparable to the Prime Rate minus the Margin Percentage.

      ALL PAYMENTS of interest will be computed on the per annum basis of a year of 360 days and for the actual number of days elapsed unless such calculation would result in a usurious rate, in which case interest will be calculated on the per annum basis of a year of 365 or 366 days, as the case may be.

      NOTWITHSTANDING anything to the contrary contained herein, if at any time the Stated Rate exceeds the Maximum Rate, the rate of interest accruing on this note will be limited to the Maximum Rate, but any subsequent reductions in the Prime Rate will not reduce the rate of interest accruing on this note below the Maximum Rate until the total amount of interest accrued on this note equals the amount of interest that would have accrued if a varying rate per annum equal to the Stated Rate had at all times been in effect.

Page 1 of 7

The undersigned here[...]
that the foregoing is a [...]
correct copy of the [...]
Guardian Fidelity Title Co[...]
By: _____

IF AT maturity or final payment of this note the total amount of interest paid or accrued under the foregoing provisions is less than the total amount of interest that would have accrued if a varying rate per annum equal to the Stated Rate had at all times been in effect, then Maker agrees to pay to Payee an amount equal to the difference between (a) the lesser of (i) the amount of interest that would have accrued on this note if the Maximum Rate had at all times been in effect or (ii) the amount of interest that would have accrued if a varying rate per annum equal to the Stated Rate had at all times been in effect, and (b) the amount of interest accrued in accordance with the other provisions of this note.

THIS NOTE is due and payable in **twenty-four (24)** monthly installments, the first **twenty-three (23)** monthly installments of which being in the amount of accrued interest only each and the **twenty-fourth (24th)** and final installment being in the amount of the balance of principal and accrued interest then due on this note. The first such installment is due and payable on **May 22, 2008**, and the remaining installments are due and payable in consecutive order on the same day of each and every succeeding calendar month thereafter until the Maturity Date, when all sums called for under this note shall be due and payable in full.

MAKER may prepay the principal of this note, in whole or in part, at any time without penalty or premium. Accrued and unpaid interest with respect to any principal amount prepaid is due and payable on the date of such prepayment. All amounts of principal so prepaid and received by Payee will be applied to the last maturing installments of this note in their inverse order of maturity.

ALL SUMS payable or to be payable under this note must be paid in lawful money of the United States of America that, at the time of payment, is legal tender for the payment of public and private debts. All sums paid on this note will be applied first to accrued and unpaid interest and the balance, if any, to unpaid principal. Whenever any payment to be made under this note is stated to be due on a Saturday, Sunday or legal holiday for commercial banks under applicable law, then such payment is due and may be made on the next succeeding business day, and such extension of time will be included in the computation of payment of interest under this note. In the event payments under this note are required to be made on the 29th, 30th, or 31st day of the month and a month has fewer days than the payment date, the payment date for such month will be the last day of the month. Any check, draft, negotiable order of withdrawal, money order or other instrument given in payment of all or any portion of this note may be accepted by Payee and handled in collection in the customary manner, but will not constitute payment under this note or diminish any rights of Payee except to the extent that actual cash proceeds of any instrument are unconditionally received by Payee.

ALL PAST due principal and interest will bear interest from the date due until paid at the Maximum Rate. The "**Maximum Rate**" means the maximum non-usurious rate of interest per annum permitted by whichever of applicable laws of the United States of America or Texas permit the higher interest rate, including to the extent permitted by applicable laws, any future amendments of such laws or any new laws coming into effect in the future to the extent a higher rate of interest is permitted by any such amendment or new law; provided, however, that if applicable laws do not provide for a maximum non-usurious rate of interest (for example, a loan secured by a first lien on residential real estate), then the Maximum Rate means **eighteen percent (18%)** per annum. The Maximum Rate will be applied by taking into account all amounts characterized by applicable law as interest on the debt evidenced by this note, so that the aggregate of all interest does not exceed the maximum non-usurious amount permitted by applicable law. Alternatively, Payee may charge and collect a late fee of **five percent (5%)** of any scheduled installment that is more than **ten (10)** days past due.

THE PAYMENT of this note is secured by: (a) a Construction Deed of Trust, Security Agreement and Financing Statement (Leasehold) conveying from **Maker** to **James W. Goolsby, Jr.**, Trustee, the following-described property:

> **Surface estate only in and to a 2.717 acre tract of land located in the Thos J. Chambers Survey, Abstract 7, in the City of Waco, McLennan County, Texas and being out of Lot Two (2), Block B of this Jefferson Park Addition, Recorded in Volume 64, Page 490 of the Official Public Records of McLennan County, Texas. Said 2.717 acre tract being more particularly described in Exhibit "A" attached hereto and incorporated herein;**

together with all buildings and other improvements thereon and hereafter placed thereon and other related personal property; (b) an Assignment of Rents of even date herewith from Maker to Payee; (c) Guaranty Agreements of even date herewith from **Wallace Bajjali Development Partners, LP**, a Texas limited partnership, **Stonehenge Companies, LLC**, a Texas limited liability company, **Nancy Gollan, Trustee** of the **Whitney L. Wallace 1996 Sub-S Trust**, a Texas Trust, and the **Jacquelyn M. Wallace 1996 Sub-S Trust**, a Texas Trust, **David G. Wallace**, **Kevin J. Matocha** and **Costandl R. Bajjali** to Payee. This note and any document, instrument or agreement executed in connection with, or as security for, this note including, without limitation, the documents referred to in this paragraph shall be referred to hereinafter as the **"Loan Documents"**.

ANY OF the following events shall be considered an **"Event of Default"**, as that term is used herein:

(a)    any installment or payment of principal or interest of this note is not paid within ten (10) days after being due;

(b)    default occurs under the Loan Documents and such default remains uncured after any applicable notice and cure periods;

(c)    Maker or any co-maker, drawer, acceptor, endorser, guarantor (subject to replacement as provided in the Loan Documents), surety, accommodation party or other person now or hereafter primarily or secondarily liable upon or for payment of all or any part of this note (each hereinafter called an **"other liable party"**) dies or becomes insolvent (however such insolvency may be evidenced);

(d)    any proceeding, procedure or remedy supplementary to or in enforcement of judgment in excess of $100,000 is resorted to or commenced against Maker or any other liable party, or with respect to any property of any of them;

(e)    any governmental authority or any court at the instance thereof takes possession of any substantial part of the property (provided, however, that in the event of condemnation or other taking, the terms of the Loan Documents shall control) or assumes control over the affairs or operations of, or a receiver is appointed for or takes possession of the property of, or a writ or order of attachment or garnishment is issued or made against any of the property of Maker or any other liable party;

(f)    any indebtedness for which Maker or any other liable party is primarily or secondarily liable to Payee is not paid when due or becomes due and payable by acceleration of maturity thereof, or if any event or condition occurs which permits the holder of any such indebtedness to declare it due and payable upon the lapse of time, giving of notice or otherwise;

(g)    Maker or any other liable party (if other than a natural person) is dissolved, wound up, liquidated or otherwise terminated, or a party to any merger, consolidation, or change of ownership that results in a change or control without the written consent of Payee;

(h)    Maker or any other liable party sells substantially all or an integral portion of its assets without the written consent of Payee;

(i)    Maker or any other liable party fails to furnish financial or other information requested by Payee; or

(j)    Maker or any other liable party furnishes or furnished any financial or other information or statements that are misleading in any material respect.

Following the occurrence of an Event of Default, at the option of Payee, this note and any and all other indebtedness of Maker to Payee, will become and be due and payable forthwith without demand, notice of default, notice of intent to accelerate the maturity of this note, notice of acceleration of the maturity of this note, notice of non-payment, presentment, protest or notice of dishonor, all of which are expressly waived by Maker and each other liable party. Payee's failure to exercise this option upon any default does not waive the right to exercise it in the event of any subsequent default.

NEITHER the failure to exercise, nor delay in exercising, Payee's right to accelerate the maturity of this note or any other right, power or remedy upon any default may be construed as a waiver of such default or as a waiver of the right to exercise any such right, power or remedy at any time. No single or partial exercise by Payee of any right, power or remedy exhausts the same or precludes any other or further exercise thereof, and every such right, power or remedy may be exercised at any time and from time to time. All remedies provided for in the Loan Documents are cumulative of each other and of any and all other remedies existing at law or in equity, and Payee is, in addition to the remedies provided in the Loan Documents, entitled to avail itself of all such other remedies as may now or hereafter exist at law or in equity for the collection of the indebtedness owing under this note. The resort to any remedy provided for under the Loan Documents, or provided for by law or in equity will not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies. Without limiting the generality of the foregoing provisions, Payee's acceptance from time to time of any payment under this note that is past due or that is less than the payment in full of all amounts due and payable at the time of such payment, will not (a) constitute a waiver of or impair or extinguish the rights of Payee to accelerate the maturity of this note or to exercise any other right, power or remedy at that time or at any subsequent time, or nullify any prior exercise of any such right, power or remedy, (b) constitute a waiver of the requirement of punctual payment and performance, or (c) constitute a novation in any respect.

IF MORE than one person or entity executes this note as Maker, all of said parties are jointly and severally liable for payment of the indebtedness evidenced by this note. Maker and each other liable party:

(a)     waive demand, presentment for payment, notice of dishonor, notice of non-payment, protest, notice of protest, notice of intent to accelerate, notice of intent to foreclose, notice of acceleration and all other notices (except only for any notices that are specifically required by any of the Loan Documents), filing of suit and diligence in collection of this note or enforcing any of the security for this note;

(b)     agree to any substitution, subordination, exchange, release or impairment of any security or the release of any party primarily or secondarily liable on this note;

(c)     agree that Payee is not required first to institute suit or exhaust its remedies against Maker, any other liable party, or others liable or to become liable on this note or to enforce its rights against them or any security for this note;

(d)     consent to any extension or postponement of time of payment of this note for any period or periods of time and to any partial payments, before or after maturity, and to any other indulgences with respect to this note, without notice thereof to any of them; and

(e)     submit (and waive all rights to object) to personal jurisdiction in the State of Texas, and venue in **Harris** County, Texas, for the enforcement of any and all obligations under the Loan Documents.

Maker agrees to provide, or cause to be provided, forthwith to Payee, all information reasonably requested by Payee concerning or relating to any security for this note and the financial status of Maker and any other liable party.

IF PAYEE retains an attorney in connection with any default or at maturity or to collect, enforce or defend this note or any of the other Loan Documents in any lawsuit or in any probate, reorganization, bankruptcy or other proceeding, including a garnishment that affects Maker, any other liable party or any collateral described in or secured by the Loan Documents, or if Maker sues Payee in connection with this note or any of the other Loan Documents and does not prevail, then Maker agrees to pay to Payee, in addition to principal and interest, all reasonable costs and expenses incurred by Payee in trying to collect this note or in any such suit or proceeding, including reasonable attorneys' fees.

MAKER and each other liable party acknowledges and agrees that Payee may, at any time, without the consent of or notice to Maker or any other liable party, assign, sell, transfer or grant participations in all or part of the obligations of Maker evidenced by this note, together with any liens or collateral securing the payment of this note. Payee may disseminate to any assignee, purchaser, transferee or participant or prospective assignee, purchaser, transferee or participant any information that Payee has pertaining to the loan evidenced by this note, including without limitation, any information regarding Maker, any other liable party, or any property owned or held by Maker or any other liable party or offered as security for or securing the loan evidenced by this note; provided, however, that any such assignee, purchaser, transferee or participant or prospective assignee, purchaser, transferee or participant shall agree to keep such information confidential.

THIS NOTE and the other Loan Documents set forth the entire agreement of the parties. There are no oral conditions, representations, agreements or commitments affecting this note, the other Loan Documents, and other loans or advances that Payee has made or may make to Maker. Payee has made no oral commitments or agreements to advance monies or make additional loans to Maker. No extension or variation in the terms of payment of this note, and no release of personal liability and/or collateral securing this note, and no satisfaction of this note in whole or in part in exchange for collateral or otherwise, is binding on Payee unless the same is in writing signed by an authorized officer of Payee.

MAKER and each other liable party grants to Payee a first lien and security interest on all deposits and other sums at any time credited by or due from Payee to Maker or any other liable party, as collateral security for the payment of this note. Payee, at its option, may at any time, without notice and without any liability, retain all or any part of any such deposits or other sums until all sums owing on this note have been paid in full and/or apply or set off all or any part of any such deposits or other sums credited by or due from Payee to or against any sums due on this note in any manner and in any order of preference that Payee, in its sole discretion, chooses.

PAYEE, Maker and all other liable parties intend to conform to and contract in strict compliance with applicable usury law from time to time in effect. All agreements between Payee, Maker and all other liable parties (and any other party liable with respect to any indebtedness under the Loan Documents) are limited by the provisions of this paragraph, which override and control all such agreements, whether now existing or hereafter arising and whether written or oral. In no way, nor in any event or contingency (including, without limitation, a payoff quote or other statement of the balance owing, prepayment, default, demand for payment, or acceleration of the maturity of any obligation), will the interest contracted for, charged or received under this note or otherwise, exceed the Maximum Rate. If, from any possible construction of any document, interest would otherwise be payable in excess of the Maximum Rate, any such construction is subject to the provisions of this paragraph and such document is automatically reformed and the interest payable is automatically reduced to the Maximum Rate, without the necessity of execution of any amendment or new document. If Payee ever receives anything of value that is characterized as interest under applicable law and that would apart from this provision be in excess of the Maximum Rate, then an amount equal to the amount that would have been excessive interest will, without penalty, be applied to the reduction of the principal amount owing on the indebtedness evidenced by this note in the inverse order of its maturity and not to the payment of interest, or, at the option of Payee, be refunded to Maker or the other payor thereof if and to the extent of such amount that would have been excessive exceeds such unpaid principal. The right to accelerate maturity of this note or any other indebtedness does not include the right to accelerate any interest that has not otherwise accrued on the date of such acceleration, and Payee does not intend to charge or receive any unearned interest in the event of acceleration. All interest paid or agreed to be paid to Payee will, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full stated term (including any renewal or extension) of such indebtedness so that the amount of interest or amount of such indebtedness does not exceed the maximum permitted by applicable law.

THIS NOTE binds and inures to the benefit of Maker and Payee and their respective heirs, legal representatives, successors and assigns. Maker may not assign this note or any loan funds, or assign or delegate any of its rights or obligations, without the prior written consent of Payee in each instance.

A PORTION of this note is a "draw note" written in the full principal amount that may be drawn by the Maker as interim financing for the construction of improvements on real property described above. Interest shall accrue only from the date funds are advanced, and liability of Maker is limited to the unpaid principal actually drawn plus unpaid interest, plus such other expenses as may be specifically provided for in this note or the other Loan Documents. Payee shall not be required to advance funds under this note unless Payee's usual and customary requirements with respect to title evidence, insurance, survey and loan documentation have been met, the work on the building to the point of the draw is deemed satisfactory by Payee in accordance with its usual and customary standards and all terms, conditions and obligations of the Loan Agreement have been and continue to be performed and existing to Payee's satisfaction. The parties hereto expressly waive the provisions and requirements of Chapter 346 of the Texas Finance Code, and agree that the terms of this note shall not be governed by the provisions thereof.

MAKER EXPRESSLY acknowledges, understands and agrees that Payee's document retention policy involves the imaging of the Loan Documents and the destruction of the paper originals thereof. In connection therewith, Maker hereby waives any and all rights Maker have or may have to claim, for any and all purposes whatsoever, that the imaged copies of the Loan Documents are not originals thereof.

THIS NOTE shall be deemed to be an obligation made under, and shall be construed in accordance with and governed by, the laws of the State of Texas.

THIS REAL ESTATE LIEN NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PAYEE AND THE MAKER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PAYEE AND THE MAKER. THE MAKER WAIVES THE REQUIREMENT, IF ANY, SET FORTH IN TEXAS BUSINESS & COMMERCE CODE §26.02, AS AMENDED, THAT THE PAYEE EXECUTE THIS INSTRUMENT WITH RESPECT TO THE DISCLAIMER OF ORAL AGREEMENTS SET FORTH IN THIS PARAGRAPH TO THE EXTENT PERMITTED BY APPLICABLE LAW. THE MAKER ACKNOWLEDGES THAT THE PAYEE HAS CONSPICUOUSLY POSTED NOTICES INFORMING THE MAKER OF THE PROVISIONS SET FORTH IN TEXAS BUSINESS & COMMERCE CODE §26.02, AS AMENDED.

Maker has duly executed this note as of the day and year hereinabove set forth.

SWB WACO SH, L.P.,
a Texas limited partnership

By:     SWB WACO SH GP, LLC,
        a Texas limited liability company,
        its General Partner

By:_____
        Kevin J. Matocha, President

# EXHIBIT B

**CONSTRUCTION DEED OF TRUST, SECURITY**
**AGREEMENT AND FINANCING STATEMENT**
**(LEASEHOLD)**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF MCLENNAN | § | |

That the undersigned, **SWB WACO SH, L.P.**, a Texas limited partnership, hereinafter called "**Grantors**" (whether one or more), whose address for notice hereunder is **3050 Post Oak Boulevard, Suite 1690, Houston, Texas 77056**, in consideration of **TEN AND NO/100 DOLLARS ($10.00)** cash in hand paid by **JAMES W. GOOLSBY, JR.**, hereinafter called "**Trustee**", whose address for purposes of notice is **Attn: James W. Goolsby, Jr., 2550 North Loop West, Suite 600, Houston, Harris County, Texas 77092** the receipt of which payment is hereby acknowledged and confessed, and in consideration of the debt and trust hereinafter mentioned have Granted, Bargained, Sold and Conveyed, and by these presents do Grant, Bargain, Sell and Convey unto Trustee, and unto the successor or substitute Trustee hereinafter provided, the following property situated in **McLennan** County, Texas, to-wit:

(a)     All of Grantor's leasehold estate ("**Leasehold Interest**") under that certain Ground Lease (the "**Ground Lease**") by and between the **CITY OF WACO, TEXAS**, a home rule municipal corporation of McLennan County, Texas ("**Lessor**") and Grantors in certain real property and premises described below (the "**Land**"):

**Surface estate only in and to a 2.717 acre tract of land located in the Thos J. Chambers Survey, Abstract 7, in the City of Waco, McLennan County, Texas and being out of Lot Two (2), Block B of this Jefferson Park Addition, Recorded in Volume 64, Page 490 of the Official Public Records of McLennan County, Texas. Said 2.717 acre tract being more particularly described in Exhibit "A" attached hereto and incorporated herein;**

(b)     All buildings and other improvements now or hereafter situated or placed on the Land (the "**Improvements**"), all of which improvements shall be deemed and considered to be a part of the realty;

(c)     All equipment, fixtures, furnishings and articles of personal property leased or owned by Grantors (the "**Personal Property**") now or hereafter attached to or used in or about the Improvements or that are necessary or useful for the complete and comfortable use and occupancy of the Improvements for the purposes for which they were or are to be attached, placed, erected, constructed or developed, or which Personal Property is or may be used in or related to the planning, development, financing or operation of the Improvements, and all renewals of or replacements or substitutions for any of the foregoing, whether or not substitutions for any of the foregoing, whether or not the same are or shall be attached to the Land or Improvements, including, but not limited to, all heating, lighting, cooling, ventilating, air conditioning, refrigeration, plumbing, incinerating, water-heating, cooking, pollution control, gas, electric, solar, nuclear and other equipment and fixtures;

... undersigned hereby certifies ... the foregoing is a true and correct copy of the original ... dian Fidelity Title Co. NWB, LLC

(d)     All water and water rights utility capacity (including any form of reservation which may be granted by any governmental subdivision), timber, crops and mineral interests pertaining to the Land;

(e)     All building materials and equipment now or hereafter delivered to and intended to be installed in or on the Land or the Improvements;

(f)     All plans and specifications for the Improvements;

(g)     All deposits (including tenants' security deposits) bank accounts, funds, documents, contract rights, accounts, accounts receivable, commitments, construction contracts, architectural agreements, general intangibles (including, without limitation, trademarks, trade names and symbols) and instruments, notes or chattel paper arising from or by virtue of any transactions related to the Land, the Improvements or the Personal Property;

(h)     All permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Land, the Improvements and the Personal Property;

(i)     All proceeds arising from or by virtue of the sale, lease or other disposition of the Land, the Improvements or the Personal Property;

(j)     All proceeds (including premium refunds) of each policy of insurance relating to the Land, the Improvements or the Personal Property;

(k)     All proceeds from the taking of any of the Land, the Improvements, the Personal Property or any rights appurtenant thereto by right of eminent domain or by private or other purchase in lieu thereof, including change of grade of streets, curb cuts or other rights of access, for any public or quasi-public use under any law;

(l)     All right, title and interest of Grantors in and to all streets, roads, public places, easements and rights-of-way, existing or proposed, public or private, adjacent to or used in connection with, belonging or pertaining to the Land;

(m)    All of the leases, rents, royalties, bonuses, issues, profits, revenues or other benefits of the Land, the Improvements or the Personal Property, including, without limitation, cash or securities deposited pursuant to leases to secure performance by the leases of their obligations thereunder;

(n)     All consumer goods located in or about the Land or the Improvements, or used in connection with the use or operation thereof;

(o)     Other interests of every kind and character that Grantors now have or at any time hereafter acquire in and to the Land, Improvements and Personal Property described herein and all property that is used or useful in connection therewith, including rights of ingress and egress and all reversionary rights or interests of Grantors with respect to such property;

(p)     All right, title and interest in and to said real estate, Improvements, and Personal Property, acquired by Grantors after the execution of this Deed of Trust;

2

(q)   Any and all rights and appurtenances belonging, incident or appertaining to said Land, Improvements and Personal Property, or any part thereof;

(r)   All of the plans and specifications and drawings (including, but not limited to, plot plans, foundation plans, street plans, utilities facilities plans, floor plans, elevations, framing plans, cross-sections of walls, mechanical plans, electrical plans and architectural and engineering plans, and architectural and engineering studies and analysis) heretofore or hereafter prepared by any architect or engineer, in respect to any of the above-described property;

(s)   Any commitment issued by any lender, investor or other party to finance or invest in any of the above-described property;

(t)   All rights under any completion bond, performance bond, labor and material bond, or any other bonds relating to the above-described property, or to any contract providing for construction of any improvements to the above-described property; and

(u)   All reversions and remainders in the above-described property.

TO HAVE AND TO HOLD the above-described property, together with all and singular the rights, privileges, hereditament and appurtenances thereunto in anywise incident, appertaining or belonging (all of which are hereinafter called "**Premises**") unto Trustee, and his successors or substitutes forever; and Grantors hereby bind themselves, their heirs, successors, assigns and legal representatives, to warrant and forever defend title to said Premises unto Trustee, his successors and substitutes, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

This conveyance is made in trust on the following trusts, terms and conditions, and for the purpose of securing and enforcing the payment of a certain Real Estate Lien Note (hereinafter called "**Note**") of even date herewith in the principal sum of **EIGHTEEN MILLION AND NO/100 DOLLARS ($18,000,000.00)**, being payable on or before **April ____, 2010**, and bearing interest before and after maturity thereof as therein specified, containing certain accelerating, maturity and attorney's fee collection clauses, as specified therein, executed by **Grantors** and payable to the order of **STERLING BANK,** a Texas banking corporation (hereinafter, together with any subsequent holder of the Note, called "**Beneficiary**"), whose address is **2550 North Loop West, Suite 600, Houston, Harris County, Texas 77092**, in lawful money of the United States of America; all renewals, rearrangements, extensions and/or modifications of the Note; and all other sums of money which may be hereafter paid or advanced by or on behalf of Beneficiary under the terms and provisions of this Construction Deed of Trust, Security Agreement and Financing Statement (Leasehold) ("**Deed of Trust**") or the Loan Agreement described herein; any additional loans made by Beneficiary to Grantors (it being contemplated that Beneficiary may lend additional sums to Grantors from time to time, but shall not be obligated to do so, and Grantors hereby agreeing that any such additional loans shall be secured by the Deed of Trust); and any and all other indebtedness, obligations and liabilities of any kind of the Grantors to Beneficiary, now or hereafter existing, absolute or contingent, joint and/or several, secured or unsecured, due or not due, arising by operation of law or otherwise, or direct or indirect, including indebtedness, obligations and liabilities to Beneficiary of the Grantors as a member of any partnership, syndicate, association or other group, and whether incurred by the Grantors as principal, surety, endorser, guarantor, accommodation party or otherwise, and whether originally contracted with Beneficiary or acquired by Beneficiary pursuant to a loan participation agreement or otherwise (all of which are hereinafter referred to as the "**Indebtedness**").

3

Grantors hereby expressly covenant and agree that:

1.     **PROMISE TO PAY NOTE:**  Grantors will pay the Note secured hereby in accordance with the terms and provisions thereof.

2.     **NON-DISTURBANCE OF THIS LIEN:**  The execution of this Deed of Trust shall not impair or affect any other security which may be given to secure the payment of the Indebtedness secured hereby, and all such additional security shall be considered as cumulative.  The taking of additional security, execution of partial releases of the security or any extension of time and payment of the Indebtedness secured hereby shall not diminish the force, effect or lien of this Deed of Trust and shall not affect or impair the liability of any maker, surety or endorser for the payment of said Indebtedness.

3.     **PAYMENT OF AD VALOREM TAXES, ASSESSMENTS, ETC.:**  Grantors will pay as same come due and before same become delinquent, all taxes, assessments and other charges imposed, levied or assessed against the Premises.  Grantors shall furnish to Beneficiary paid tax receipts or other evidence satisfactory to Beneficiary on or before January 31 of each year with respect to taxes paid on the Premises for the previous year.  Grantors shall have the right to contest, in good faith, the proposed assessment of ad valorem taxes or special assessments by governmental authorities having jurisdiction over the Premises; provided, however, Grantors shall give written notice thereof to Beneficiary and Beneficiary may, in its sole discretion, require Grantors to post a bond or other collateral satisfactory to Beneficiary in connection with any such action by Grantors.

4.     **KEEPING PREMISES IN GOOD REPAIR:**  Grantors will keep the Premises in good condition and repair (subject, however, in the case of casualty or condemnation, to Grantors' receipt of insurance or condemnation proceeds to make such repairs) and will not commit or permit any waste, impairment or deterioration of the same and generally will not do any act by which the value of the Premises may become impaired.  Neither shall any improvements, fixtures, or personal property be altered, destroyed or removed from said Premises without the written consent of Beneficiary.

5.     **RENTS AS ADDITIONAL COLLATERAL:**  On default in the prompt payment of any sums of money secured by the Deed of Trust, Beneficiary, or any Agent of Beneficiary, shall have the right, but not the obligation, to demand, collect, receive, sue for and recover in its own name all presently owing or future rents, revenues, and incomes and to apply the same to the payment of the Indebtedness secured hereby, after first deducting therefrom all expenses of collection.  On such default, Beneficiary shall also have the right to take possession of the Premises, remove all persons therefrom and rent the same for the account of Grantors, and employ such agents and attorneys as may be necessary with respect thereto.  Likewise, on such default, Beneficiary shall be entitled to have a receiver appointed to take possession of the Premises and to collect all rents, income and revenues without notice to Grantors and without regard to the valuation of said Premises or the solvency or insolvency of Grantors or any other person liable for any part of the Indebtedness secured hereby, and without prejudice to any other rights or remedies.  Notwithstanding other language contained herein, if a separate Assignment of Rents is executed in connection with this Deed of Trust, such document shall be controlling in connection with Grantors' assignment of rents and/or leases to Beneficiary.

4

6.  **INSURANCE REQUIREMENTS:** Grantors will keep all improvements, if any, now on, or that hereafter may be put upon, the Premises, including buildings and fixtures and all personal property used in the operation of the Premises (other than any of such personal property owned by tenants), insured at all times through a standard extended coverage all risk policy, against loss or damage by fire, lightning, and such other risks of damage, hazards, vandalism, malicious mischief, and all other perils customarily covered in a standard extended coverage all risk policy, in an amount not less than the full one hundred percent (100%) replacement cost of the Premises and all improvements, including the cost of debris removal, but in any event not less than the original principal balance of the Note. Grantors shall maintain comprehensive general public liability insurance in form and amounts satisfactory to Beneficiary. Grantors shall also maintain, during all periods in which any construction, alteration or improvements are being made to the Premises, contingent liability insurance covering any claim not covered by the general comprehensive insurance referred to above and worker's compensation insurance covering all employees engaged in making such construction alterations and improvements. Grantors shall also maintain, if applicable, Broad Form Builder's Risk, completed building non-reporting form insurance. Grantors shall maintain all insurance required herein, and other insurance required by Beneficiary from time to time, in the manner and form specified by Beneficiary, subject to the following terms and conditions:

(a)     All policies of insurance required by this paragraph shall be issued by a company or companies and in amounts acceptable to, and in every respect satisfactory to, Beneficiary and shall provide that the coverage evidenced thereby shall not be terminated or materially modified without fifteen (15) days' prior written notice to Beneficiary and that Beneficiary is the loss payee thereunder. All policies of liability insurance shall list Grantors and Beneficiary as named insureds. Grantors shall provide to Beneficiary a Certificate to the effect that such coverage is in effect concurrently with the execution and delivery of this Deed of Trust. If Grantors fail to carry any insurance required to be carried by Grantors under the terms of this Deed of Trust, Beneficiary, at its option, may procure and maintain such insurance and Grantors will promptly reimburse Beneficiary for any premiums paid by Beneficiary for such insurance. Copies of all policies of insurance required to be carried under this Deed of Trust, bearing notations evidencing the payment of premiums or accompanied by other evidence satisfactory to Beneficiary of such payment, shall be promptly delivered to Beneficiary upon Beneficiary's request.

(b)     All policies of insurance required by this paragraph shall contain a non-contributory standard mortgage clause in favor of Beneficiary and a waiver of insurer's right of subrogation against funds paid under the standard mortgagee endorsement. In case of a loss payable under such insurance for damage to or destruction of the Premises, the right to adjust all claims under such insurance policies, and the application of the proceeds of any such claim, are assigned to Beneficiary.

(c)     Beneficiary consents to Grantors providing any of the insurance required hereunder through blanket policies carried by Grantors and covering more than one location. Grantors shall furnish Beneficiary with a certificate of such policy for the Premises together with a certificate of insurance for each such policy setting forth the coverage, the limits of liability, the name of the carrier, the policy number, and the expiration date. Any such policies shall otherwise comply with provisions of this Deed of Trust and shall allocate to the Premises the coverage specified hereunder, which shall not be less than that which would have been afforded under a separate policy relating only to the Premises without possibility of reduction or coinsurance by reason of, or damage to, any other property named therein.

(d)     Grantors shall give prompt written notice to Beneficiary of a fire or other casualty causing damage to the Premises or any part thereof in excess of $5,000.00. If the Premises, or any portion thereof, is damaged or destroyed, the following terms and conditions shall apply:

5

(i)     If the Premises, or any portion thereof, is damaged or destroyed, and the aggregate cost of replacement, restoration and/or rebuilding of the Premises exceeds $1,000,000.00, and if Beneficiary, in its sole discretion, elects not to have Grantors replace, restore or rebuild the Premises, all proceeds of insurance shall be payable to Beneficiary, and the same (less costs, fees and expenses incurred by Beneficiary in the collection thereof, including, without limitation, adjuster's and attorney's fees and expenses to the extent permitted by law) shall be applied against all sums payable to Beneficiary under this Deed of Trust, and under any other document, agreement or instrument executed in connection with or as security for the Indebtedness, against accrued but unpaid interest under the Indebtedness and against the principal balance of the Indebtedness, in such order as Beneficiary shall determine in its sole discretion. Grantors hereby authorize and direct any affected insurance company to make payment of such proceeds directly to Beneficiary.   Grantors shall pay directly to Beneficiary any deficiency between the insurance proceeds paid to Beneficiary and the total Indebtedness owing from Grantors to Beneficiary, consisting of interest, principal and other costs and expenses recoverable by Beneficiary under this Deed of Trust or under any other document, agreement or instrument executed in connection with or as security for the Indebtedness.

(ii)     In all cases in which the Premises, or any portion thereof, is damaged or destroyed, and the aggregate cost of replacement, restoration and/or rebuilding of the Premises does not exceed $1,000,000.00, or if the damage exceeds $1,000,000.00, and Beneficiary determines in its sole discretion to have Grantors replace, restore or rebuild the Premises, all insurance proceeds on account of any damage to or destruction of the Premises (less costs, fees and expenses incurred by Beneficiary in the collection thereof, including without limitation, adjuster's and attorney's fees and expenses to the extent permitted by law) shall be paid to Beneficiary to be applied as follows:

(1)     Grantors shall furnish to Beneficiary evidence satisfactory to Beneficiary of the total cost of restoration, replacement or rebuilding of the Premises as nearly as possible to its value, condition, and character immediately prior to such damage or destruction (such restoration, replacement and rebuilding, together with any temporary repairs and property protection pending completion of the work, is hereafter referred to as "**Restoration**"). Beneficiary shall hold all insurance proceeds until Grantors deposit with Beneficiary the total amount of money ("**Restoration Deposit**") which, when added to the insurance proceeds on hand, less anticipated costs of collection and administration, is sufficient in Beneficiary's reasonable judgment to pay the cost of the Restoration; the total of such amounts is hereafter referred to as the "**Net Damage Proceeds.**" The Net Damage Proceeds shall be held by Beneficiary without payment or allowance of interest.

(2)     After Beneficiary has received the Net Damage Proceeds, the Net Damage Proceeds shall, unless an event of default has occurred and is continuing, be paid to Grantors or as Grantors may direct, from time to time as Restoration progresses, to pay (or reimburse Grantors for) the cost of Restoration. Such payment shall be made only on the request of Grantors, verified by Beneficiary or a construction expert chosen by Beneficiary, and accompanied by such evidence as Beneficiary may reasonably request, consistent with standard construction lending practices, including without limitation, evidence: (i) of satisfactory progress of completion of Restoration in accordance with plans approved by Beneficiary and applicable law, (ii) that the Net Damage Proceeds remaining are sufficient to cover the cost of the remaining Restoration, (iii) of satisfactory affidavits, certificates, waivers and releases of lien, and (iv) that all work then

6

performed to date, other than work for which payment is included within any then current request, has been paid in full, subject to any retention for which Net Damage Proceeds have not been disbursed. In addition, Beneficiary is hereby authorized and empowered to do all things provided to be done by a deed of trust beneficiary under applicable law and any present or future amendments or supplements thereto, for the protection of Beneficiary's interest in the Premises.

(e)     Notwithstanding the foregoing, in the event: (i) of any claim or loss involving a single loss aggregating less than $100,000.00, or (ii) Restoration is completed in accordance with applicable law and Grantors submit to Beneficiary evidence satisfactory to Beneficiary of such completion and of payment of the cost thereof in full prior to date of disbursement of insurance proceeds, such proceeds shall be paid to Grantors. Grantors may settle, adjust or compromise any claim or loss under any policy of insurance involving a single loss aggregating less than $100,000.00.

(f)     Except to the extent that insurance proceeds are received by Beneficiary and applied to the Indebtedness secured hereby, nothing herein contained shall excuse Grantors from repairing or maintaining the Premises as provided in this Deed of Trust or restoring all damage or destruction to the Premises, regardless of whether any such proceeds are sufficient in amount but provided all such proceeds are paid to Grantors for such repair, maintenance or restoration. The application or release by Beneficiary of insurance proceeds shall not cure or waive any event of default or notice of the same or invalidate any act done pursuant to such notice.

(g)     The foregoing provisions shall not create any duty on the part of Beneficiary to collect insurance proceeds and the Beneficiary shall not be responsible for the failure to collect the same regardless of the cause of such failure.

7.     **BENEFICIARY'S RIGHT TO PAY AD VALOREM TAXES AND INSURANCE PREMIUMS:** If Grantors fail to pay as same become due and payable, all taxes, assessments and other charges imposed, levied or assessed against said Premises or to maintain the insurance coverage, all as herein provided, Beneficiary may, at its option and without waiver of any other rights granted by this Deed of Trust for breach of the covenants contained herein, procure and pay for any such insurance coverage and pay any such taxes, assessments and other charges, including any sums that may be necessary to redeem the Premises from tax sale, without obligation to inquire into the validity of any such taxes, assessments, charges and tax sales, the receipts of the proper officers being conclusive evidence of the validity and amount thereof. All amounts so paid by Beneficiary shall immediately become due to Beneficiary, together with interest thereon from the first day of the calendar month in which such payments were made at the rate provided in the Note secured hereby, and all such amounts shall be added to and become a part of the Indebtedness secured by this Deed of Trust.

8.     **NO OTHER SUPERIOR LIENS:**   Grantors will not suffer or permit any lien superior or equal to the lien created hereby to attach to or be enforced against the Premises.

9.     **CONDEMNATION:**   Should the Premises, or any part thereof, or any interest therein, be taken or damaged by reason of exercise of the power of eminent domain (including inverse condemnation) or in any similar manner (collectively, **"Condemnation"**), or should Grantors receive any notice or other information regarding a Condemnation proceeding, Grantors shall give prompt written notice thereof to Beneficiary.

7

(a)      If as a result of any Condemnation, the entire Premises is taken, or if so much thereof is taken that, in the reasonable judgment of Beneficiary, the balance of the Premises cannot reasonably and profitably be operated, or if pursuant to the provisions of subparagraph (f) of this section below, Grantors elect not to replace, restore or rebuild the Premises, Beneficiary shall be entitled to and shall receive all compensation, awards and other payments or relief (collectively, **"Condemnation Proceeds"**) which Grantors are entitled to receive pursuant to the Condemnation (less costs, fees and expenses incurred by Beneficiary in the collection thereof, including, without limitation, attorneys' fees and expenses, to the extent permitted by law) and such sums shall be applied against all sums payable to Beneficiary under this Deed of Trust and under any other document, agreement or instrument executed in connection with or as security for the Indebtedness, against accrued but unpaid interest under the Indebtedness and against the principal balance of the Indebtedness in such order as Beneficiary shall determine in its sole discretion. Grantors hereby assign to Beneficiary all of Grantors' right, title and interest in and to all Condemnation Proceeds, including, without limitation, interest.

(b)      If, for any reason, paragraph (a) does not apply, then in the event of any Condemnation, all Condemnation Proceeds which Grantors are entitled to receive shall be delivered to Beneficiary.

(c)      Condemnation Proceeds received by Beneficiary pursuant to paragraph (b) (less costs, fees and expenses incurred by Beneficiary in the collection thereof, including without limitation, attorneys' fees and expenses, to the extent permitted by law) shall be applied as follows:

(1)      Grantors shall promptly furnish to Beneficiary evidence satisfactory to Beneficiary of the total cost of restoration, replacement or rebuilding of the remainder of the Premises as nearly as possible to its value, condition and character prior to such Condemnation (such restoration, replacement and rebuilding, together with any temporary repairs and property projections pending completion of the work, being herein called **"Condemnation Restoration"**). Beneficiary shall hold all Condemnation Proceeds until it receives from Grantors the total amount of money (**"Condemnation Restoration Deposit"**) which, when added to the Condemnation Proceeds on hand, is sufficient to pay the cost of Condemnation Restoration; the total of such amounts is hereinafter referred to as the **"Net Condemnation Proceeds."** The Net Condemnation Proceeds shall be held by Beneficiary without payment or allowance of interest.

(2)      After the conditions of subparagraph (1) have been complied with, the Net Condemnation Proceeds received on account of any Condemnation shall, unless an event of default has occurred and is continuing, be paid to Grantors or as Grantors may direct, from time to time as Condemnation Restoration progresses, to pay (or reimburse Grantors for) the cost of Condemnation Restoration. Such payment shall be made only upon request of Grantors, verified by an agent or designee of Beneficiary, accompanied by such evidence as Beneficiary may reasonably request, consistent with standard construction lending practice, including, without limitation, evidence: (a) of satisfactory progress of completion of Condemnation Restoration in accordance with plans approved by Beneficiary and applicable law, (b) that the Net Condemnation Proceeds remaining are sufficient to cover the cost of the remaining Condemnation Restoration, (c) of satisfactory affidavits, certificates, waivers and releases of lien, and (d) that all work then performed to date, other than work for which payment is included within any then current request, has been paid for in full, subject to any retention for which Net Condemnation Proceeds have not been disbursed. In addition, Beneficiary is hereby authorized and empowered to do all things provided to be done by a deed of trust beneficiary under applicable law for the protection of Beneficiary's interest in the Premises.

8

(d)      Notwithstanding the foregoing, but subject to subparagraph (e) of this section below, in the event: (1) of any Condemnation involving a single loss aggregating less than $1,000,000.00, or (2) Condemnation Restoration is completed in accordance with applicable law and Grantors submit to Beneficiary evidence satisfactory to Beneficiary and any agent or designee of Beneficiary of such completion and payment of the cost thereof in full prior to the date of disbursement of Condemnation Proceeds, such Condemnation Proceeds shall be paid to Grantors.

(e)      In the event any action is filed to condemn all or part of the Premises under the power of eminent domain, or any action is filed to acquire the temporary use of all or part of the Premises, or any such action is threatened, Beneficiary shall have the right to represent Beneficiary's interest in each proceeding, negotiation or settlement with respect to any taking or threatened taking and to make full proof of its claims. No agreement, settlement, conveyance or transfer to or with the condemning authority shall be made without the consent of Beneficiary, whether or not Beneficiary elects to participate in such proceeding, negotiation or settlement.

(f)      By written notice given within thirty (30) days of the date of Condemnation of any portion of the Premises, Grantors may elect, subject to the provisions of the following subparagraph (g), to prepay all Indebtedness and other sums due under the Indebtedness, under this Deed of Trust and under any other document, agreement or instrument executed in connection with or as security for the Indebtedness.

(g)      Grantors will execute and deliver any agreements, instruments or documents necessary to effect collection of any Condemnation Proceeds, with interest thereon.

10.      **SUBSEQUENT OWNERS:**   Subject to the provisions of Paragraph 20, Beneficiary may deal with any subsequent owner or successors in interest of the Premises or any part thereof without notice to Grantors and without limiting or discharging the liability of Grantors under this Deed of Trust and the Indebtedness secured hereby. Sale of the Premises, forbearance by Beneficiary, extensions of the time of payment of the Indebtedness secured hereby or acceleration of the time for payment of the Indebtedness secured hereby and the subsequent reinstatement of same, shall not operate to release, discharge, modify, change or affect the original liability of Grantors in whole or in part.

11.      **WAIVER OF APPRAISEMENT LAWS:**   Grantors expressly waive and renounce the benefit of all present and future laws providing for any appraisement before sale of any of the property covered by this Deed of Trust, commonly known as "appraisement laws", and all present and future laws extending in any manner the time for enforcement of collection of the Indebtedness secured hereby, commonly known as "stay laws" and "redemption laws".

12.      **DEFECT IN TITLE: BANKRUPTCY AND INSOLVENCY:**   If, subsequent to the execution and delivery of this Deed of Trust, it should be ascertained that there is a material adverse defect in the title of Grantors to the Premises, or that there is a lien of any nature whatsoever on any part of the Premises, which is equal or superior in rank to the lien granted by this Deed of Trust, or if a homestead claim is asserted to any part of the Premises adverse to this trust, or if Grantors or any subsequent owner of the Premises or any guarantor of the Indebtedness become insolvent or bankrupt, or a receiver be appointed for their property, or a petition for reorganization, arrangement, receivership, bankruptcy or related proceedings be filed by or against Grantors or any subsequent owner of the Premises, of any guarantor of the Indebtedness, then in any such event Beneficiary shall have the right to declare the Indebtedness secured hereby at once due and payable without demand or notice, and the lien granted by this Deed of Trust may be foreclosed.

9

13.   **FORECLOSURE PROVISIONS:**   (a) If the Indebtedness secured hereby is fully paid in accordance with the terms and provisions of this Deed of Trust and Note, and if the covenants and agreements contained herein are kept and performed, then this conveyance shall become null and void and shall be released at the expense of Grantors; otherwise, the same shall remain in full force and effect; and if default is made in the payment of any part of the Indebtedness secured hereby or in the performance of any of the covenants and agreements contained in this Deed of Trust or in the Note, or in any document executed in connection therewith, then the entire Indebtedness secured hereby shall, at once or at any time thereafter while any part of said Indebtedness remains unpaid, at the option of any Beneficiary, become due and payable without demand or notice (all rights to demand and notice being hereby expressly waived), and it shall thereupon be the duty of the above named Trustee, or his successor or substitute, as hereinafter provided, to enforce this trust at the request of any Beneficiary (which request shall be presumed) and to sell the Premises with or without first having taken possession of the same and in whole or in part, as the acting Trustee may elect (all rights to a marshalling of assets of Grantors being expressly waived hereby), to the highest bidder for cash at public auction at the Courthouse door of the County in which said Premises are situated on the first Tuesday of any month between the hours of 10 A.M. and 4 P.M. after giving notice of the time, place and terms of sale and the Premises to be sold by (i) the acting Trustee or any person chosen by him posting or causing to be posted written or printed notice thereof at least twenty-one (21) days preceding the date of said sale at the County Courthouse door of said County, (ii) the acting Trustee or any person chosen by him filing or causing to be filed with the County Clerk of the County in which the Premises are situated written or printed notice thereof at least twenty-one (21) days preceding the date of said sale, and (iii) the Beneficiary or any person chosen by it, at least twenty-one (21) days preceding the date of said sale, serving written notice of such proposed sale by certified mail on each debtor obligated to pay the Indebtedness evidenced by the Note according to the records of Beneficiary.   Service of such notice to each debtor shall be completed upon deposit of the notice, enclosed in a postpaid wrapper, properly addressed to each debtor at the most recent address as shown by the records of Beneficiary, in a post office or official depository under the care and custody of the United States Postal Service.   The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.   After such sale, the acting Trustee shall make due conveyance with general warranty to the purchaser or purchasers and the Grantors bind themselves, their heirs, assigns, executors, administrators, successors and legal representatives to warrant and forever defend the title of such purchaser or purchasers.

(b)   If default is made in the payment of any part of the Indebtedness secured hereby or in the performance of any of the covenants and agreements contained in this Deed of Trust or in the Note, Beneficiary shall have the right and option to proceed with foreclosure in satisfaction of such item or items by directing the Trustee, or his successor or substitute as hereinafter provided, to proceed as if under a full foreclosure, conducting the sale as herein provided, and without declaring the whole debt due, and provided that if sale is made because of default as hereinabove mentioned, such sale may be made subject to the unmatured part of the Note and the Indebtedness secured hereby, and it is agreed that such sale, if so made, shall not in any manner affect any other obligation secured hereby, and as to such other obligations this Deed of Trust and the liens created hereby shall remain in full force and effect just as though no sale had been made under the provisions of this Paragraph 13(b).   It is further agreed that several sales may be made hereunder without exhausting the right of sale for any other breach of any of the obligations secured hereby; it being the purpose to provide for a foreclosure and sale of the Premises for any matured portion of any of the Indebtedness secured hereby or other items provided for herein without exhausting the power to foreclose and to sell the Premises for any other part of the Indebtedness secured hereby whether matured at the time or subsequently maturing.

(c)      The proceeds from any such sale shall be applied by the acting Trustee as follows:

FIRST:      To the payment of all expenses of advertising, selling and conveying said Premises, including a commission to the acting Trustee of five percent (5%) of the amount of the unpaid Indebtedness secured hereby.

SECOND:      To the payment to Beneficiary of all unpaid Indebtedness and accrued interest to the date of sale.  Any abstract of title to the Premises furnished in connection with this loan shall be delivered and become the property of the purchaser at said sale.

THIRD:      The balance, if any, shall be paid to Grantors.

(d)      The acting Trustee hereunder shall have the right to sell the Premises in whole or in part and in such parcels and order as he may determine, and the right of sale hereunder shall not be exhausted by one or more sales, but successive sales may be had until all of the Premises have been legally sold.  In the event any sale hereunder is not completed or is defective in the opinion of Beneficiary or the holder of any part of the Indebtedness, such sale shall not exhaust the power of sale hereunder, and Beneficiary or such holder shall have the right to cause a subsequent sale or sales to be made by the Trustee or any successor or substitute Trustee.  Likewise, Beneficiary may become the purchaser at any such sale if it is the highest bidder, and shall have the right, after paying or accounting for all costs of said sale or sales, to credit the amount of the bid upon the amount of the Indebtedness owing, in lieu of cash payment.  The purchaser or purchasers at foreclosure shall have the right to affirm or disaffirm any lease of said Premises.

(e)      It shall not be necessary for the acting Trustee to have constructively in his possession any part of the real or personal property covered by this Deed of Trust, and the title and right of possession of said property shall pass to the purchaser or purchasers at such sale as fully as if the same had been actually present and delivered.  Likewise, on foreclosure of this Deed of Trust whether by power of sale herein contained or otherwise, Grantors or any person claiming any part of the Premises by, through or under Grantors, shall not be entitled to a marshalling of assets or a sale in inverse order of alienation.

(f)      The recitals and statements of fact contained in any notice or in any conveyance to the purchaser or purchasers at any such sale shall be prima facie evidence of the truth of such facts, and all prerequisites and requirements necessary to the validity of any such sale shall be presumed to have been performed.

(g)      Any sale under the powers granted by this Deed of Trust shall be a perpetual bar against Grantors, their heirs, successors, assigns and legal representatives.

14.      **TENANTS AT WILL AFTER FORECLOSURE:** In the event of a foreclosure under the powers granted by this Deed of Trust, Grantors, and all other persons in possession of any part of the Premises, shall be deemed tenants at will of the purchaser at such foreclosure sale and shall be liable for a reasonable rental for the use of said Premises; and if any such tenants refuse to surrender possession of said Premises upon demand, the purchaser shall be entitled to institute and maintain the statutory action of forcible entry and detainer and procure a writ of possession thereunder, and Grantors expressly waive all damages sustained by reason thereof.

11

15.   **PROVISIONS FOR SUBSTITUTE TRUSTEE:**  In case of the death, inability, refusal or incapacity of the herein named Trustee to act, or at the option of any Beneficiary at any time and without cause or notice, a successor or substitute Trustee may be named, constituted and appointed. Successor or substitute trustees may be named, constituted and appointed without procuring the resignation of the former trustee and without other formality than the execution and acknowledgement by Beneficiary of a written instrument (which instrument, if Beneficiary is a corporation, shall be executed by the President or any Vice President and without the necessity of any action by the Board of Directors authorizing such appointment) appointing and designating such successor or substitute trustee, whereupon such successor or substitute trustee shall become vested with and succeed to all of the rights, titles, privileges, powers and duties of the Trustee named herein.  Such right of appointment of a substitute trustee shall exist as often and whenever for any of said causes the original or successor or substitute trustee cannot or will not act or has been removed as herein provided.

16.   **USURY SAVINGS CLAUSE:**  This Deed of Trust has been executed and delivered in, and the Note has been issued in, the State of Texas, and each is to be construed in accordance with and governed by the laws of the State of Texas and the laws of the United States of America, as applicable.  In the event that any one or more of the provisions contained in this Deed of Trust shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Deed of Trust.  Furthermore, it is the intention of Grantors and Beneficiary to conform strictly to applicable usury laws, as presently in effect.  Accordingly, if the transactions contemplated hereby would be usurious under applicable law (including the laws of the State of Texas and the laws of the United States of America), then notwithstanding anything to the contrary in the Note or any other evidence of the Indebtedness, or any agreement entered into in connection with or as security for the Indebtedness, it is agreed as follows:  (i) the aggregate of all consideration which constitutes interest under applicable law that is contracted for, charged or received under the Indebtedness or under any of the other aforesaid agreements or otherwise in connection with the Indebtedness shall under no circumstances exceed the maximum amount of interest permitted by applicable law, and any excess shall be credited on the Indebtedness by the holder thereof (or, if the Indebtedness shall have been paid in full, refunded to the Grantors); and (ii) in the event that the maturity of the Indebtedness is accelerated by reason of an election of the holder thereof resulting from any event of default under this Deed of Trust or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest may never include more than the maximum amount permitted by applicable law, and excess interest, if any, provided for in this Deed of Trust or otherwise shall be cancelled automatically as of the date of such acceleration or prepayment and, if theretofore paid, shall be credited on the Indebtedness (or, if the Indebtedness shall have been paid in full, refunded to the Grantors).

17.   **UNSECURED PORTION OF DEBT:**  If the lien created by this Deed of Trust shall be invalid or unenforceable as to any part of the Indebtedness secured hereby, the unsecured portion of said Indebtedness shall be completely paid and liquidated prior to the payment and liquidation of the remaining and secured portion of said Indebtedness, and all payments made on said Indebtedness shall be considered to have been first paid on and applied to the complete payment and liquidation of that portion of the Indebtedness which is not secured by the lien of this Deed of Trust.

18.   **ESCROW ACCOUNT:**  In the event a default has occurred and remains uncured after any applicable notice and cure periods, and upon request from Beneficiary, Grantors shall create a fund or reserve for the payment of all insurance premiums, taxes and assessments against the Premises by paying to Beneficiary each month contemporaneously with the installments due and payable on the Note a sum equal to the premiums that will next become due and payable on the hazard insurance policies covering

12

the Premises, plus taxes and assessments next due and payable on the Premises, as estimated by Beneficiary, less all sums paid therefor, divided by the number of months to elapse before two (2) months prior to the date when such premiums, taxes and assessments will become due and payable, such sums to be held by Beneficiary without interest for the purpose of paying such premiums, taxes and assessments. Any excess reserve shall, at the discretion of Beneficiary, be credited by Beneficiary on subsequent payments to be made by Grantors, and any deficiency shall be paid by Grantors to Beneficiary on or before the date when such premiums, taxes and assessments shall be due. Transfer of legal title to the Premises shall automatically transfer to the new owner the beneficial interest in all sums deposited under the provisions of this paragraph.

19.   **SUBROGATION RIGHTS OF BENEFICIARY:**  It is understood and agreed that the proceeds of the Note, to the extent that the same are utilized to take up any outstanding liens and charges against the Premises, or any portion thereof, have been advanced by Beneficiary at Grantors' request and upon Grantors' representation that such amounts are due and payable. Beneficiary shall be subrogated to any and all rights, superior titles, liens and equities, owned or claimed by any owner or holder of said outstanding liens however remote regardless of whether said liens are acquired by assignment or are released by the holder thereof upon payment.

20.   **DUE ON SALE:**   Grantors shall not sell, assign, mortgage or otherwise transfer or encumber their interest in the Premises without first obtaining the prior written consent of Beneficiary. Beneficiary shall be under no obligation to consent to any requested sale, assignment, transfer, mortgage or encumbrance of Grantors' interest in the Premises. Without limiting the foregoing, if Beneficiary does grant such consent, it may make such conditions for the granting of that consent as it may in its sole discretion deem necessary, desirable or appropriate, including without limitation (i) requiring the payment to it of a transfer fee to cover the cost of documenting the transaction on its books, (ii) requiring the payment of all of its attorneys' fees in connection with such sale, assignment, transfer, mortgage or encumbrance, (iii) increasing the interest rate on the Indebtedness, (iv) requiring the express assumption of payment of the Indebtedness and of the obligations under this Deed of Trust by the transferee of such interest in the Premises (with or without the release of Grantors from liability for such payment and obligations), (v) requiring the execution of an assumption agreement, modification agreements, supplemental security documents and financing statements satisfactory in form and substance to Beneficiary, (vi) requiring endorsements to any existing mortgage title insurance policies insuring its security interest in the Premises, and (vii) requiring additional security for the payment of the Indebtedness. Grantors' failure to comply with this Paragraph 20 prior to consummating any such sale, assignment, transfer, mortgage or encumbrance shall constitute a default under the Note and breach of this Deed of Trust, entitling Trustee and Beneficiary to avail themselves of all rights, powers, remedies and resources allowed or permitted therein or herein.

21.   **GRANTING OF SECURITY INTEREST:**  Without limiting any of the provisions of this Deed of Trust, Grantors, as Debtor, and referred to in this Paragraph as "Debtor" (whether one or more), expressly grant unto Beneficiary, as Secured Party, and referred to in this Paragraph as "Secured Party" (whether one or more), a security interest in all of the Premises (including both that now and that hereafter existing) to the full extent that the Premises may be subject to the Uniform Commercial Code of the state or states where the Premises is situated. The security interest granted hereby also covers and includes all equipment, accounts, general intangibles, fixtures and other personal property used, or acquired for use, on or in connection with the use or operation of the Premises, or otherwise related to the Premises, and all products and proceeds thereof. All such equipment, accounts, general intangibles, fixtures and other personal property, products and proceeds are hereinafter collectively referred to as the "Collateral" for the purposes of this Paragraph.

13

Debtor covenants and agrees with Secured Party that:

(a)    In addition to and cumulative of any other remedies granted in this Deed of Trust to Secured Party or the Trustee, Secured Party or the Trustee may, upon or at any time after default under this Deed of Trust proceed under said Uniform Commercial Code as to all or any part of the Collateral and shall have and may exercise with respect to the Collateral all the rights, remedies and powers of a secured party under said Uniform Commercial Code, including, without limitation, the right and power to sell, at public or private sale or sales, or otherwise dispose of, lease or utilize the Collateral and any part or parts thereof in any manner authorized or permitted under said Uniform Commercial Code after default by a debtor, and to apply the proceeds thereof toward payment of any costs, expenses, attorneys' fees and legal expenses thereby incurred by Secured Party, and toward payment of the Indebtedness in such order or manner as Secured Party may elect. Among the rights of Secured Party upon and after the occurrence of an event of default, and without limitation, Secured Party shall have the right to take possession of the Collateral and to enter upon any premises where the same may be situated for such purpose without being deemed guilty of trespass and without liability for damages thereby occasioned, and to take any action deemed necessary, appropriate or desirable by Secured Party, at its option and in its discretion, to repair, refurbish or otherwise prepare the Collateral for sale, lease or other use or disposition as herein authorized. To the extent permitted by law, Debtor expressly waives any notice of sale or other disposition of the Collateral and any other rights or remedies of a debtor or formalities prescribed by law relative to sale or disposition of the Collateral or exercise of any other right or remedy of Secured Party existing after default hereunder; and to the extent any such notice is required and cannot be waived, Debtor agrees that if such notice is mailed, postage prepaid, to Debtor at the address designated hereinabove (or if no address is so designated, at Debtor's most recent address as shown by the records of Secured Party) at least ten (10) days before the time of any public sale or disposition, or the date after which the Collateral will be sold or disposed of by private sale, such notice shall be deemed reasonable and shall fully satisfy any requirement for giving of any such notice.

(b)    Secured Party is expressly granted the right, at its option, to transfer at any time to itself or its nominee the Collateral, or any part thereof, and to receive the monies, income, proceeds or benefits attributable or accruing thereto and to hold the same as security for the Indebtedness or to apply it to the principal and interest or other amounts owing on any of the Indebtedness, whether or not then due, in such order or manner as Secured Party may elect. All rights to marshaling of assets or sale in inverse order of alienation, including any such rights with respect to the Collateral, are hereby waived.

(c)    All recitals in any instrument of assignment or any other instrument executed by Secured Party incident to the sale, transfer, assignment, lease or other disposition or utilization of the Collateral or any part thereof hereunder shall be full proof of the matters stated therein, and no other proof shall be required to establish full legal propriety of the sale or other action or of any fact, condition or thing incident thereto, and all prerequisites of such sale or other action and of the fact, condition or thing incident thereto shall be presumed conclusively to have been performed or to have occurred.

14

(d)     Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party that is reasonably convenient to both parties. All expenses of retaking, holding, preparing for sale, lease or other use or disposition, selling, leasing or otherwise using or disposing of the Collateral and the like which are incurred or paid by Secured Party as authorized or permitted hereunder, including all attorney's fees, legal expenses and costs, shall be added to the Indebtedness secured by this Deed of Trust and Debtor shall be liable therefor.

(e)     Should Secured Party elect to exercise its rights under said Uniform Commercial Code as to part of the personal property or fixtures described herein, this election shall not preclude Secured Party or the Trustee from exercising any or all of the rights and remedies granted by the other Paragraphs of this Deed of Trust as to the remaining personal property or fixtures.

(f)     Secured Party may, at its election, at anytime after delivery of this Deed of Trust, sign one or more copies hereof in order that such copies may be used as a financing statement under said Uniform Commercial Code. Said signature by Secured Party may be placed between the last sentence of this Deed of Trust and Debtor's acknowledgment or may follow Debtor's acknowledgment. Secured Party's signature need not be acknowledged and is not necessary to the effectiveness hereof as a deed of trust, mortgage, assignment, pledge, security agreement or (unless otherwise required by applicable law) as a financing statement.

(g)     So long as any amount remains unpaid on the Indebtedness, Debtor will not execute and there will not be filed in any public office any financing statement or statements affecting the Collateral other than financing statements in favor of Secured Party hereunder, unless prior written specific consent and approval of Secured Party shall have been first obtained.

(h)     Secured Party is authorized to file in any jurisdiction where Secured Party deems it necessary, a financing statement or statements and one or more continuation statements, and at the request of Secured Party, Debtor will join Secured Party in executing one or more financing statements, continuation statements or both pursuant to said Uniform Commercial Code in form satisfactory to Secured Party, and will pay the cost of filing or recording this Deed of Trust as a financing statement, in all public offices at any time and from time to time whenever filing or recording of any financing statement, continuation statement or this Deed of Trust is deemed by Secured Party to be necessary or desirable.

(i)     Certain of the Collateral is or will become "fixtures" (as that term is defined in said Uniform Commercial Code) on the real estate described or referred to in this Deed of Trust, and this Deed of Trust upon being filed for record in the real estate records of the county wherein such fixtures are situated shall operate also as a financing statement upon such of the Collateral which is or may become fixtures.

Debtor further warrants and represents to Secured Party that, except for the security interest granted hereby in the Collateral, Debtor is the legal and equitable owner and holder of the Collateral free of any adverse claim and free of any security interest or encumbrance except only those (if any) expressly hereinafter referred to or described, and Debtor agrees to defend the Collateral against all claims and demands of any person at any time claiming the same or any interest therein. Debtor further warrants and represents that Debtor has not heretofore signed or authorized any financing statement directly or

15

indirectly affecting the Collateral or any part thereof, and no such financing statement signed or authorized by Debtor is now on file in any public office, except for such statements (if any), true and correct copies of which have been delivered to Secured Party.

22. **HEIRS, SUCCESSORS, ASSIGNS AND LEGAL REPRESENTATIVES:** The covenants and agreements herein contained shall inure to the benefit of and be binding upon the respective heirs, successors, assigns, and legal representatives of the parties hereto. Whenever used, the singular number shall include the plural, the plural shall include the singular, and the use of any gender shall be applicable to all genders.

23. **APPRAISALS AND CLASSIFICATION OF LOAN:** Grantors hereby agree and covenant (i) that Grantors shall reimburse Beneficiary for any and all reasonable expenses incurred by Beneficiary in connection with any test appraisal of the Premises required by any regulatory authority of Beneficiary, such payment to be paid within ten (10) days after written request by Beneficiary, and (ii) in the event that any regulatory authority of Beneficiary requires it to create a specific reserve for the Note or classifies the Note as a "scheduled item", Grantors shall, within ten (10) days after written request by Beneficiary, deposit in a pledged savings account in Beneficiary the amount of money necessary to remove the Note as a "scheduled item" and/or remove the specific reserve requirements of such authority.

24. **SUBJECT TO EASEMENTS, RESTRICTIONS, ETC.:** This Deed of Trust is executed subject to all valid easements, restrictions, covenants, mineral and/or royalty reservations and maintenance charges, if any, applicable to and enforceable against the Premises which have been duly recorded in the real estate records of the county in which the Premises are located prior to the date of the recording of this Deed of Trust.

25. **FINANCIAL INFORMATION; RIGHT OF INSPECTION; APPRAISALS:** Grantors agree to provide, or cause to be provided, promptly to Beneficiary, all information reasonably requested by Beneficiary concerning the Premises and the financial status, including without limitation financial statements and tax returns, of Grantors and of any other parties obligated on the Indebtedness. Grantors will permit any officer, employee or agent of Beneficiary to visit and inspect the Premises and all personal property related thereto, examine their respective books of record and accounts, take copies and extracts therefrom, and discuss the affairs, finances and accounts of the Grantors with its accountants and auditors, all at such reasonable times upon reasonable notice and as often as the Beneficiary may desire. Any inspection or audit of any of the Premises or the books and records of the Grantors, or the procuring of documents and financial and other information, by or on behalf of Beneficiary shall be for Beneficiary's protection only, and shall not constitute any assumption of responsibility to the Grantors or anyone else with regard to the condition, construction, maintenance or operation of any of such properties nor Beneficiary's approval of any certification given to Beneficiary nor relieve the Grantors of any of their obligations under the Note, Deed of Trust or other loan instruments executed in connection therewith. Grantors hereby agree and covenant that Beneficiary, at its option, may from time to time during the term of this Deed of Trust, but no more frequently than once every two (2) years, require that appraisals be made of the Premises by an appraiser satisfactory to Beneficiary. Any such appraisal shall cover such matters as Beneficiary may require and shall be in form and substance satisfactory to Beneficiary. Grantors shall pay for any and all expenses incurred by Beneficiary in connection with any such appraisal, with such payment to be made within ten (10) days after written request by Beneficiary.

16

26.   **COMPLIANCE WITH ENVIRONMENTAL LAWS, ETC:**   Grantors shall keep and maintain the Premises in compliance with, and shall not cause or permit the Premises to be in violation of any applicable environmental, air quality, zoning, planning, building, health, fire, traffic, safety, wetlands, coastal and other governmental or regulatory rules, laws, ordinances, statutes, codes or requirements applicable to the Premises.   Upon Beneficiary's request upon reasonable suspicion of environmental contamination, Grantors shall furnish to Beneficiary, at Grantors' sole cost and expense, an environmental audit of the Premises performed by an auditor satisfactory to Beneficiary.   Additionally, upon Beneficiary's request, Grantors shall furnish to Beneficiary evidence, satisfactory to Beneficiary, that Grantors have complied with all federal financial assurance requirements in connection with any underground storage tanks affecting said Premises.  Such audit must cover all applicable environmental requirements and be in form and substance satisfactory to Beneficiary.   However, in connection therewith, Grantors hereby appoint Beneficiary as their attorney in fact (with an interest coupled with the property which shall be irrevocable) to obtain such environmental audits and/or tests, at Grantors' expense.   Grantors shall protect, indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against any and all loss, damage, cost expenses or liability (including attorneys' fees and costs) directly or indirectly arising out of or attributable to the use, generation, manufacture, production, storage, release, threatened discharge, disposal, or presence of any hazardous substance on, under or about the Premises including without limitation (a) all foreseeable consequential damages; and (b) the costs of any required or necessary repair, cleanup or detoxification of the Premises and the preparation and implementation of any closure, remedial or other required plans.  If Grantors fail to furnish Beneficiary such environmental audits and/or environmental site assessments within twenty-one (21) days after Beneficiary's request therefor, then Grantors appoint Beneficiary as Grantors' agent to have such environmental tests and/or audits conducted as Beneficiary deems advisable and at Grantors' expense.  This indemnity shall survive the release of the lien of this Deed of Trust, or the extinguishment of the lien by foreclosure or action in lieu thereof, and this covenant shall survive such release or extinguishment, , provided, however, Grantors shall have no liability if the Premises become contaminated subsequent to Beneficiary's or its designee's acquisition of the Premises by foreclosure, acceptance by the Beneficiary or its designee of a deed in lieu thereof or subsequent to any other transfer of ownership of the Premises which was approved or authorized by Beneficiary in writing.

27.   **CALCULATION OF DEFICIENCY:**  Should Beneficiary seek a deficiency judgment from Grantors and/or any other party obligated on the Note or guaranty of the Note in connection with the judicial or nonjudicial foreclosure sale of the Premises or any portion thereof, the following shall be the basis for the finder of fact's determination of the fair market value of the real property described herein as of the date of the foreclosure sale in proceedings governed by sections 51.003, 51.004, and 51.005 of the Texas Property Code (as amended from time to time):

a.   The real property described herein shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the real property described herein will be repaired or improved in any manner before a resale of the real property described herein after foreclosure;

b.   The valuation shall be based upon an assumption that the foreclosure purchaser desires a prompt resale of the real property described herein for cash promptly (but no later than twelve months) following the foreclosure sale;

17

c.      All reasonable closing costs customarily borne by the seller in a commercial real estate transaction should by deducted from the gross fair market value of the real property described herein, including, without limitation, brokerage commissions, title insurance, a survey of the real property described herein, tax prorations, attorney's fees, and marketing costs;

d.      The gross fair market value of the real property described herein shall be further discounted to account for any estimated holding costs associated with maintaining the real property described herein pending sale, including, without limitation, utilities expenses, property management fees, taxes and assessments (to the extent not accounted for in the preceding paragraph), and other maintenance expenses; and

e.      Any expert opinion testimony given or considered in connection with a determination of the fair market value of the real property described herein must be given by persons having at least five years experience in appraising property similar to the real property described herein and who have conducted and prepared a complete written appraisal of the real property described herein taking into consideration the factors set forth above.

28.    **FORFEITURE OF COLLATERAL:** Grantors represent and warrant to Beneficiary that neither Grantors nor any other person has committed any act or omission, or has consented to any act or omission, with respect to the Premises, which would afford the federal government or any state or local government the right or remedy of forfeiture of all or any part of the Premises, any other collateral securing the Note or the Indebtedness described herein, or any property (including but not limited to money paid) delivered to Beneficiary or any other party in performance of Grantors' obligations arising in connection with the Indebtedness, or any interest in or income, profits or proceeds of any of the property described in this sentence (hereinafter called the "**Mortgaged Property**"). Grantors agree not to engage in any act or permit any act or omission to exist which would afford the federal government or any state or local government the right or remedy of forfeiture of all or any part of the Mortgaged Property. Without limiting the generality of the preceding sentence, the filing of any charges or commencement or threatened commencement of any proceeding against Grantors or any other person liable on the Indebtedness, or against any of the Mortgaged Property or anyone having an interest in, or use or possession of any of the Mortgaged Property, which asserts or could afford the federal government or any state or local government the right or remedy to forfeit any of such Mortgaged Property, constitutes, at Beneficiary's election, an event of default under this Deed of Trust and all Indebtedness described herein and secured hereby. Grantors shall protect, indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against any and all loss, damage, cost, expense or liability (including attorneys' fees and costs) directly or indirectly arising out of or attributable to any failure of the representations or breach of any agreement set forth in this paragraph.

29.    **EVENTS REQUIRING NOTIFICATION:** Grantors shall notify Beneficiary promptly of the occurrence of any of the following:

(a)      a fire or other casualty causing damage to the Premises in excess of $5,000.00;

(b)      receipt of notice of condemnation of the Premises or any part thereof;

(c)      receipt of notice from any governmental authority relating to the structure, use or occupancy of the Premises;

18

(d)     receipt of any notice of alleged default from the holder of any lien or security interest in the Premises;

(e)     the commencement of any litigation affecting the Premises; or

(f)     any change in the occupancy of the Premises.

,30.     **NOTICES:** All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or received by registered mail to any party hereto at its address above stated or at such other address of which it shall have notified the party giving such notice in writing.

31.     **HEADINGS:** The paragraph headings hereof are inserted for convenience of reference only and shall not alter, define, or be used in construing the text of such paragraphs.

32.     **IMAGING OF DOCUMENTS:** Grantors expressly acknowledge, understand and agree that Beneficiary's document retention policy involves the imaging of this Deed of Trust and all other loan instruments executed in connection therewith, and the destruction of the paper originals thereof. In connection therewith, Grantors hereby waive any and all rights they have or may have to claim, for any and all purposes whatsoever, that imaged copies of this Deed of Trust and any or all other loan instruments executed in connection therewith are not originals thereof.

33.     **CASH ADVANCE:** The Note hereby secured is given for and represents the sum of **EIGHTEEN MILLION AND NO/100 DOLLARS ($18,000,000.00)**, this day advanced and to be advanced and paid in cash (and to be paid in cash) by Beneficiary at the special instance and request of the Grantors herein.

34.     **ARBITRATION: The Grantors agree to be bound by the terms and provisions of the Arbitration Agreement of even date herewith, which is incorporated by reference herein and is acknowledged as received by the parties pursuant to which any and all disputes (as defined in the Arbitration Agreement) shall be resolved by mandatory binding arbitration upon the request of any party.**

35.     **CONSTRUCTION LOAN AGREEMENT:** Grantors agree to comply with the covenants and conditions of the Construction Loan Agreement ("**Loan Agreement**") executed in connection with the Note and this Deed of Trust. All advances made by Beneficiary under the Loan Agreement will be Indebtedness of Grantors secured by the liens created by this Deed of Trust, and such advances are conditioned as provided in the Loan Agreement. All amounts disbursed by Beneficiary before completion of the improvements to protect the security of this Deed of Trust up to the principal amount of the Note will be treated as disbursements under the Loan Agreement. All such amounts will bear interest from the date of disbursements at the rate stated in the Note, unless collections from Grantors of interest at that rate would be contrary to applicable law, in which even such amounts will bear interest at the rate stated in the Note for matured, unpaid amounts and will be payable on notice from Beneficiary to Grantors requesting payment. From time to time as Beneficiary deems necessary to protect Beneficiary's interests, Grantors will, on request of Beneficiary, execute and deliver to Beneficiary, in such form as Beneficiary directs, assignments of any and all rights or claims that relate to the construction of improvements on the Premises. In case of breach by Grantors of the covenants and conditions of the Loan Agreement, Beneficiary, at its option, with

or without entry on the Premises, may (a) invoke any of the rights or remedies provided in the Loan Agreement, (b) accelerate the amounts secured by this Deed of Trust and invoke the remedies provided in this Deed of Trust, or (c) do both.

36.  **CONSTRUCTION MORTGAGE:**  This Deed of Trust is a "construction mortgage" within the meaning of section 9.334 of the Texas Business and Commerce Code.  The liens and security interest created and granted by this Deed of Trust secure an obligation incurred for the construction of improvements on land, including the cost of the land.

‚37.  **PROVISIONS RELATED TO THE GROUND LEASE:**

(a)  Unless Beneficiary shall otherwise consent in writing, so long as any of the Indebtedness remain unpaid, neither the fee title to the Land nor any other estate, title or interest in the Land shall merge with the Leasehold Interest but shall always be kept separate and distinct therefrom, notwithstanding the union or such estates either in the lessor or the lessee under the Ground Lease or in a third party, by purchase or otherwise.

(b)  Grantors shall not subordinate the Ground Lease or the Leasehold Interest to any deed of trust or other encumbrance of, or lien on, any interest in the real property subject to the Ground Lease without the prior written consent of Beneficiary.  Any such subordination without such consent shall, at Beneficiary's option be void.

(c)  Grantors hereby assign to Beneficiary a security interest in all prepaid rents and security deposits and all other security which the landlord under the Ground Lease holds for the performance of Grantors' obligations thereunder.

(d)  Grantors shall not, without Beneficiary's prior written consent, surrender, terminate, forfeit, or suffer or permit the surrender, termination or forfeiture of, or supplement, modify or amend, the Ground Lease or any rights relating to the Ground Lease or any other portion of the Premises, or waive any right, title or interest relating thereto.  Any acquisition of the lessor's interest in the Ground Lease by Grantors or any affiliate of Grantors will be accomplished by Grantors in such a manner so as to avoid a merger of the interests of lessor and lessee in the Ground Lease.  If Grantors (or any of their successors or assigns) shall acquire fee title to the Land, this Deed of Trust shall automatically be a lien on the fee title.

(e)  No release or forbearance of any of Grantors' obligations under the Ground Lease, related to the Ground Lease or otherwise, shall release Grantors from any of their obligations under this Deed of Trust, including its obligations with respect to the payment of rent as provided for in the Ground Lease and the performance of all of the terms, provisions, covenants, conditions and agreements contained in the Ground Lease, to be kept, performed and complied with by the lessee under the Ground Lease.

38.     **BANKRUPTCY PROVISIONS**.

(a)     So long as the Deed of Trust and all other instruments executed by Grantors or any other party as security for the Note (hereinafter referred to as the "**Leasehold Mortgage**") shall remain outstanding, the right of election arising under Section 365(h)(1) of the Bankruptcy Code, 11 U.S.C. §101 et seq. (the "**Bankruptcy Code**") shall be exercised by Beneficiary and not by Grantors. Any exercise or attempted exercise by Grantors of such right of election in violation of the preceding sentence shall be void.

(b)     However, if despite the foregoing provision Beneficiary is not permitted to exercise such right of election and Lessor (or any trustee of Lessor) shall reject the Ground Lease pursuant to Section 365(h) of the Bankruptcy Code, (A) Grantors shall without further act or deed be deemed to have elected under Section 365(h)(1)(A) of the Bankruptcy Code to remain in possession of the Premises for the balance of the term of the Ground Lease; (B) any exercise or attempted exercise by Grantors of a right to treat the Ground Lease as terminated under Section 365(h)(1)(A) of the Bankruptcy Code shall be void; (C) the Leasehold Mortgage shall not be affected or impaired by such rejection of the Ground Lease; and (D) the Ground Lease shall continue in full force and effect in accordance with its terms, except that Grantors shall have the rights conferred under Section 365(h)(1)(B) of the Bankruptcy Code.

(c)     For purposes of Section 365(h) of the Bankruptcy Code, the term "possession" shall mean the right to possession of the Premises granted to Grantors under the Ground Lease whether or not all or part of the Premises has been subleased.

(d)     If Grantors shall reject the Ground Lease pursuant to Section 365(a) of the Bankruptcy Code, Lessor shall serve on Beneficiary notice of such rejection, together with a statement of all sums at the time due under the Ground Lease (without giving effect of any acceleration) and of all other defaults under the Ground Lease then known to Lessor. Beneficiary shall have the right, but not the obligation, to serve on Lessor within thirty (30) days after service of the notice provided in the proceeding sentence, a notice that Beneficiary elects to (A) assume the Ground Lease, and (B) cure all defaults outstanding hereunder (1) concurrently with such assumption as to defaults in the payment of money, and (2) within sixty (60) days after the date of such assumption as to other defaults, except for defaults of the type specified in Section 365(b)(2) of the Bankruptcy Code. If Beneficiary serves such notice of assumption, then, as between Lessor and Beneficiary (A) the rejection of the Ground Lease by Grantors shall not constitute a termination of the Ground Lease, (B) Beneficiary may assume the obligations of Grantors under the Ground Lease without any instrument or assignment of transfer from Grantors, (C) Beneficiary's rights under the Ground Lease shall be free and clear of all rights, claims and encumbrances of or in respect of Grantors, and (D) Beneficiary shall consummate the assumption of the Ground Lease and the payment of the amounts payable by it to Lessor pursuant to this Section at a closing to be held at the offices of Lessor (or its attorneys) within thirty (30) days after Beneficiary shall have served the notice of assumption hereinabove provided. Upon a subsequent assignment of the Ground Lease by Beneficiary, Beneficiary shall be relieved of all obligations and liabilities arising from and after the date of such assignment.

(e)     If it is determined by the United States Bankruptcy Court that Grantors have the right pursuant to Section 365 of the Bankruptcy Code to assume and assign the Ground Lease, then Beneficiary is hereby granted the option, on a right of first refusal basis, to be the assignee of the Ground Lease upon such terms as Grantors have negotiated with any other potential assignee.

21

If Grantors elect to and are granted permission to assume and assign the Ground Lease, Grantors shall give notice of such election to Beneficiary, and Beneficiary shall have thirty (30) days after receipt of such notice within which to exercise the option granted in the preceding sentence. If Beneficiary does not exercise such option within such time, such option shall expire. Nothing herein shall be deemed to modify any other requirement regarding or restricting the assumption and/or assignment of the Ground Lease under the Bankruptcy Code.

EXECUTED this the 22 day of **April, 2008**.

> **SWB WACO SH, L.P.,**
> a Texas limited partnership
>
> By:  **SWB WACO SH GP, LLC,**
> a Texas limited liability company,
> its General Partner
>
> By: _____
> Kevin J. Matocha, President

STATE OF TEXAS                                    §
                                                 §
COUNTY OF HARRIS                                 §

This instrument was acknowledged before me on this the 22 day of **April, 2008**, by **Kevin J. Matocha**, President of **SWB Waco SH GP, LLC**, a Texas limited liability company, General Partner of **SWB Waco SH, L.P.**, a Texas limited partnership, on behalf of the limited liability company and the limited partnership.

_____
Notary Public, State of Texas

_____
Printed or Typed Name of Notary
My Commission Expires: 8-9-2010

WHEN RECORDED, RETURN TO:                        PREPARED IN THE LAW OFFICES OF:

Sterling Bank                                    HUGHES WATTERS ASKANASE, LLP
Attn: Loan Administration – Exceptions Department  Three Allen Center, 333 Clay, 29th Floor
P. O. Box 924009                                 Houston, Texas 77002
Houston, Texas 77292-4009                        (713) 328-2806
                                                 File No. 2008030742

22

**Exhibit A**

PHASE I DEVELOPMENT PROPERTY

2.717 ACRE LEASE TRACT
OUT OF LOT 2, BLOCK B, JEFFERSON PARK ADDITION
TO THE CITY OF WACO, McLENNAN COUNTY, TEXAS

DESCRIPTION FOR A 2.717 ACRE TRACT OF LAND LOCATED IN THE THOS. J. CHAMBERS SURVEY, ABSTRACT 7, IN THE CITY OF WACO, McLENNAN COUNTY, TEXAS AND BEING OUT OF LOT 2, BLOCK B OF THE JEFFERSON PARK ADDITION, RECORDED IN VOLUME 64, PAGE 490 OF THE OFFICIAL PUBLIC RECORDS OF McLENNAN COUNTY, TEXAS. SAID 2.717 ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHWEST RIGHT-OF-WAY LINE OF WASHINGTON AVENUE AT ITS INTERSECTION WITH THE NORTHEAST RIGHT-OF-WAY LINE OF SOUTH 3rd STREET (75' WIDE R.O.W.), SAID POINT BEING THE SOUTH CORNER OF THE ABOVE-MENTIONED LOT 2;

THENCE N 45°03'10" W – 100.00' WITH THE NORTHEAST RIGHT-OF-WAY LINE OF SOUTH 3rd STREET TO A SOUTHERLY CORNER AND POINT OF BEGINNING OF THE HEREIN DESCRIBED TRACT;

THENCE N 45°03'10" W – 85.00' WITH THE NORTHEAST RIGHT-OF-WAY LINE OF SOUTH 3rd STREET TO A POINT FOR AN ELL CORNER OF SAID LOT 2 AND THE HEREIN DESCRIBED TRACT;

THENCE S 44°56'50" W – 75.00' WITH A LINE OF SAID LOT 2 TO A POINT FOR A SOUTHERLY CORNER OF LOT 2 AND THE HEREIN DESCRIBED TRACT;

THENCE N 45°03'10" W – 276.45' WITH THE SOUTHWEST LINE OF SAID LOT 2 TO A POINT FOR THE WEST CORNER OF LOT 2 AND THE HEREIN DESCRIBED TRACT;

THENCE N 44°56'50" E – 345.09' WITH THE NORTHWEST LINE OF SAID LOT 2 TO A POINT FOR THE NORTH CORNER OF LOT 2 AND THE HEREIN DESCRIBED TRACT;

THENCE S 45°03'10" E – 361.45' WITH THE NORTHEAST LINE OF SAID LOT 2 TO A POINT FOR THE EAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE S 44°56'50" W – 270.09' THROUGH THE INTERIOR OF LOT 2 TO THE POINT OF BEGINNING.

# EXHIBIT C

**Heritage Quarters**
**Waco, Texas**
**Monthly Budget Summary**
**2010**

| | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | |
| Net Rental Income | 157,748 | 170,248 | 170,248 | 170,248 | 170,248 | 170,248 | 1,008,988 |
| Total Other Rental Income | 8,090 | 7,510 | 9,090 | 9,560 | 9,540 | 9,635 | 53,425 |
| | | | | | | | |
| **Effective Gross Income** | 165,838 | 177,758 | 179,338 | 179,808 | 179,788 | 179,883 | 1,062,413 |
| | | | | | | | |
| **OPERATING EXPENSE** | | | | | | | |
| | | | | | | | |
| Payroll | 29,421 | 34,630 | 26,457 | 26,742 | 27,128 | 27,472 | 171,851 |
| Repairs and Maintenance | 3,200 | 4,850 | 2,900 | 2,800 | 4,750 | 2,800 | 21,300 |
| Marketing & Leasing | 2,950 | 7,350 | 4,100 | 3,800 | 3,800 | 4,100 | 26,100 |
| Res Life | 1,300 | 1,000 | 1,000 | 750 | 1,000 | 1,000 | 6,050 |
| General & Administrative | 3,280 | 3,605 | 3,065 | 3,225 | 3,315 | 3,305 | 19,794 |
| Common Area Expenses | 10,190 | 10,190 | 10,355 | 10,190 | 10,290 | 10,355 | 61,570 |
| Utilities | 17,560 | 17,560 | 17,560 | 17,060 | 17,060 | 17,560 | 104,360 |
| Management Fees | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 30,000 |
| Property Insurance | | | | 10,000 | 3,920 | 3,920 | 17,840 |
| Capital/Improvements/Reserve | 1,104 | 1,104 | 1,104 | 1,104 | 1,104 | 1,104 | 6,624 |
| DASH Shuttle Payment | | | 25,000 | | | | 25,000 |
| Bankruptcy Costs | | | | | 10,000 | 10,000 | 20,000 |
| **Total Operating Expenses** | 74,005 | 85,289 | 96,541 | 80,671 | 87,366 | 86,616 | 510,489 |
| | | | | | | | |
| **Cash Flow from Operations** | 91,833 | 92,469 | 82,797 | 99,137 | 92,422 | 93,267 | 551,924 |
| | | | | | | | |
| **Interest Payments** | 76,905 | 76,905 | 76,905 | 76,905 | 76,905 | 76,905 | 461,430 |
| | | | | | | | |
| **Net Monthly Cash Flow** | 14,928 | 15,564 | 5,892 | 22,232 | 15,517 | 16,362 | 90,494 |

# EXHIBIT D

**Heritage Quarters**
**Waco, Texas**
**Weekly Budget Summary**
**2010**

| | 09/06/10 | 09/13/10 | 09/20/10 | Total |
|---|---|---|---|---|
| **OPERATING EXPENSE** | | | | |
| Payroll | | 14,711 | | 14,711 |
| Repairs and Maintenance | 1,067 | 1,067 | 1,067 | 3,200 |
| Marketing & Leasing | 983 | 983 | 983 | 2,950 |
| Res Life | 433 | 433 | 433 | 1,300 |
| General & Administrative | 1,093 | 1,093 | 1,093 | 3,280 |
| Common Area Expenses | | 1,000 | 9,190 | 10,190 |
| Utilities | | | 17,560 | 17,560 |
| **Total Operating Expenses** | 3,577 | 19,287 | 30,327 | 53,190 |